### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

| | |
|---|---|
| ZORAN ZUZA,                  ) | |
|                       ) | |
|       Plaintiff, *in Pro Se*,    ) | |
|                       ) | |
|          v.               ) | Civil No. 1:14-cv-01099 |
|                       ) | |
| OFFICE OF THE HIGH      ) | |
| REPRESENTATIVE *et al*.    ) | |
|                       ) | |
|       Defendants.         ) | |

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR RECONSIDERATION

In compliance with the Court Order of July 30, 2015 (ECF No. 23) ("Supp. Brief Order"), Plaintiff Zoran Zuza ("Plaintiff") hereby submits this supplemental brief.[1] Concurrently herewith, Plaintiff has submitted a: **(1)** motion to strike, **(2)** evidentiary objection; and **(3)** motion for leave to conduct limited jurisdictional discovery.

## I.  INTRODUCTION

A review of Defs.' Supp. Brief reveals why Individual Defendants shrank from advancing the arguments therein until ordered to do so by the Court:  they are spurious. Said arguments have one redeeming feature, however:  they repeat, affirm and ratify several of Individual Defendants' earlier concessions.  Chief among these is their

---

[1] This Court-ordered supplemental brief in no way constitutes a voluntary waiver of Plaintiff's argument that Defendants Valentin Inzko and Jeremy Ashdown (collectively, "Individual Defendants") have already conceded that they:  **(1)** must satisfy the requirements of 22 U.S.C. § 288e(a) ("Accreditation Statute"); **(2)** have failed to do so; and **(3)** consequently, do not enjoy IOIA immunity.  Individual Defendants made this concession when they failed to oppose Plaintiff's argument to this effect in his motion for reconsideration (ECF No. 19-1, at 38) ("Motion").  The Court noted said non-opposition. ECF No. 23, at 2.  In his concurrently-filed motion to strike, Plaintiff requests that the Court strike those arguments in Individual Defendants' supplemental brief ("Defs.' Supp. Brief") which are inconsistent with the above-referenced concession.

concession that Individual Defendants must satisfy the Accreditation Statute before qualifying for IOIA immunity ("Accreditation Proof Concession").  This answers the first of the Court's questions posed in the Supp. Brief Order ("Court Question(s)").  As for the balance of Defs.' Supp. Brief, it is a mass of contradictions, non sequiturs and inverted offer-and-acceptance chronologies, predicated largely on inadmissible documents.

As regards the latter, Individual Defendants' alleged evidence of the alleged satisfaction of the notification requirement of the Accreditation Statute ("Notification") consists of two alleged letters.  Neither is authenticated by the alleged sender or alleged recipient.  They are, therefore, inadmissible.  Moreover, the Court *sua sponte* concluded that one such alleged letter was facially incomplete.  In response to the Order directing the submission of its alleged attachment, Individual Defendants filed same without *any* declaration, much less an authenticating one.  Thus, the incompleteness defect persists.

Stripped of these inadmissible exhibits, Defs.' Supp. Brief fails to prove Notification.  Plaintiff's argument with respect to Court Question 2 could stop here, as the Accreditation Statute is in the conjunctive.  However, he will show below that, even assuming Notification *arguendo*, the Accreditation Statute's requirement of "accept[ance]" by the Secretary of State ("Acceptance") has not been satisfied. Individual Defendants have not introduced a certificate from the United States Department of State ("DoS") Chief of Protocol's office or a letter from the DoS Legal Advisor.  It is through these channels that the DoS, by custom, certifies Acceptance.

Nor do Individual Defendants argue that such a certificate or letter is in the offing. Even if they had, such a defense would have been unavailing.  Individual Defendants have already conceded that, in immunity cases, it is defendant's status *at the time of the*

*complaint's filing* that determines whether subject-matter jurisdiction lies ("Status Concession").[2]  The Status Concession answers Court Question 3.[3]  Taken in tandem with the Accreditation Proof Concession and the lack of evidence of Notification/Acceptance, the Status Concession confirms that Individual Defendants do not satisfy the Accreditation Statute – even if an alleged DoS "Acceptance" is hurriedly prepared and submitted tomorrow.[4]

Instead of the above-referenced DoS certification/letter, Individual Defendants cite a veritable potpourri as alleged sources of Acceptance:  PIC[5] statements, UNSC resolutions, DoS press releases and the Executive Order.  None of these disparate and diffuse documents qualifies as Acceptance for the reasons expounded in the Argument *post*.  For one thing, all the aforesaid documents predate the predicate act(s) which,

---

[2] If a retroactive statute is unconstitutional – which is generally the case – so too is a statutorily-grounded executive action that is exercised retroactively.  The creature of a statute may not have a temporal reach longer than its creator's. Individual Defendants fail to show otherwise.  A *currently-theoretical* DoS "Acceptance," effected after the filing of the Complaint, therefore, would not divest the Court of subject-matter jurisdiction herein.

[3] Plaintiff submits said judicial question raises *sua sponte* an "adversarial issue[ ] [not] presented" to the Court, inasmuch as:  **(1)** no party had raised the question previously; and **(2)** the record – at the time of the Supp. Brief Order – did not reflect an alleged post-Complaint Acceptance.

[4] Should in future a DoS "Acceptance" materialize and should such a statutorily-based exercise of executive discretion result in the dismissal of this action (Plaintiff's chose in action, in which he has a property interest), the United States government may incur liability for a taking and/or (civil) bill of attainder.  Such an outcome would be all the more assured, given the Status Concession.  Applicable law bars Individual Defendants' retreat from said concession, which a court may deem equally binding on the United States government, inasmuch as Defs.' Supp. Brief and OHR's submissions in *Sarkis v. OHR* claim(ed) that OHR and the High Representatives are "agents and instrumentalities" of the United States government.

[5] Plaintiff continues using herein the shorthand references employed in the Motion and his Reply in support thereof (ECF No. 22).

according to Individual Defendants themselves, solicited/potentiated the Acceptance, *i.e.*,
the alleged 2011 grant of IOIA immunity and/or the alleged 2011/2015 Notification(s).
While Plaintiff is familiar with the concept of anticipatory breach, he is not aware of any
authority recognizing the fanciful notion of "anticipatory acceptance" – and for good
reason:  none exists.  Certainly Individual Defendants cite none.[6]

How, despite this and several other deficiencies, the DoS press releases, PIC
statements, UNSC resolutions and the Executive Order may be deemed the Acceptance is
a question skirted by Individual Defendants – this, despite the fact that they concede:
**(1)** they bear the burden of proof herein (a concession noted and assumed *arguendo* by
the Court); and **(2)** the legal standard herein is the "clear case" benchmark.[7]

One by one, Individual Defendants' alleged sources of Acceptance fall (assuming
*arguendo* Individual Defendants even reach the stage of proving Acceptance, given that
they fail to satisfy the Notification prong of the *conjunctive* Accreditation Statute).

---

[6] In urging the Court to blaze a new trail by recognizing the chimera of "anticipatory
acceptance," Individual Defendants are not only drawing the Court into reversible error;
they are also advocating a precedent which would turn on its head venerable
jurisprudence establishing the principles – and sequence – of offer-and-acceptance.

[7] That Individual Defendants are reduced to rifling through their nearly-"ancient"
documents for any shred of paper they can dress-up as the Acceptance speaks to the
poverty of Defs' Supplemental Brief.  So too does the fact that they were forced to file
Defs.' Supp. Brief upon compulsion of contempt of Court.  In their opposition to the
Motion (ECF No. 21), Individual Defendants deemed silence on the subject of the
Accreditation Statute "the better part of valor."  Their thunderous non-opposition did not
escape the Court's notice when it ordered them to file Defs.' Supp. Brief.
ECF No. 23, at 2.  What followed is, *e.g.*, Individual Defendants' surreal argument that
an *unsigned* 2002 statement by a legal phantom – the PIC – constitutes the legal
acceptance by then-Secretary of State Colin Powell of an alleged immunity, which,
according to Individual Defendants themselves, did not even come into alleged existence
until nine years later – during a different administration.

Viewed from any angle, Individual Defendants fail to show they satisfied, at the time of the Complaint's filing, the requirements of the Accreditation Statute, which they concede they must satisfy before qualifying for IOIA immunity.  No hypothetical DoS intervention in the future would alter this conclusion.

For the aforesaid reasons, elaborated below, the Court should reconsider its dismissal of Individual Defendants.

## II.  ARGUMENT

### A.    The Court Has Declared And Individual Defendants Have Conceded – Twice Now – That They Must Satisfy The Accreditation Statute Before Qualifying For IOIA Immunity

The Court noted Individual Defendants' concession that they bear the burden of proof upon their motion to dismiss and the Motion.  *Zuza v. Office of the High Representative et al.*, No. 14-cv-01099, 2015 WL 3503939, at * 4 n.3 (D.D.C. June 4, 2015) (ECF No. 18); ECF No. 23 at 2 & 3.  The Court assumes *arguendo* that Individual Defendants bear said burden.[8]  *Ibid.*  Accordingly, if they cannot carry this burden with respect to the Accreditation Statute, they may not be dismissed from this action. *See United States v. Dizdar*, 581 F.2d 1031, 1033 (2nd Cir. 1978) ("[T]he burden was upon the [party seeking to establish immunity/inviolability] to prove that those whom the defendants had conspired to seize and to detain as hostages were 'persons of a foreign nationality who [had been] duly notified to the United States' . . . .").

---

[8] It was, therefore, incumbent upon Individual Defendants (not Plaintiff) to be the first to raise, in their November 2014 motion to dismiss, the Accreditation Statute, which they concede they must satisfy.  Their failure to do so has resulted in an eight-month delay in the adjudication of the questions raised by said statute.

The Court has delineated what Individual Defendants must prove.  The Order declared that the Court "reads" the Accreditation Statute "to suggest that section 8(a) articulates three alternative *prerequisites* for obtaining immunity under the IOIA" (emphasis in the original).  ECF No. 23, at n.1.  It follows that the negative converse is that, if Individual Defendants fail to prove they satisfy at least one of the "three alternative prerequisites" of the Accreditation Statute, they do NOT enjoy immunity.

Individual Defendants do not dispute this judicial interpretation.  Nor do they claim to qualify under Subdivisions (2) or (3) of the Accreditation Statute ("designated" individual "prior to formal notification or acceptance" or "member of family . . ." of an accredited person).  Indeed, neither subdivision earns even a passing mention in Defs.' Supp. Brief.  Accordingly, Individual Defendants align themselves squarely with the Court's position that, in order to "obtain[ ] immunity under the IOIA,"[9] they must first satisfy Subdivision (1) of the Accreditation Statute by proving that they have been "duly notified to and accepted by the Secretary of State."  *Ibid.*; Defs.' Supp. Brief, at 8 ("The United States unquestionably *was* notified and accepted the High Representatives" [emphasis added]).  The Accreditation Proof Concession confirms this.[10]

---

[9] ECF No. 23, at n.1.

[10] The Accreditation Proof Concession occurred in July 2015, when Individual Defendants did not oppose Plaintiff's argument in the Motion that: **(1)** they failed to prove they satisfy Subdivision (1) of the Accreditation Statute; **(2)** they do not satisfy same; and **(3)** thus, they do not enjoy IOIA immunity.  The Court recognized said non-opposition (ECF No. 23, at 2), which constitutes a concession of all three arguments. *Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*, 901 F. Supp. 2d 19, 37-38 (D.D.C. 2012) (citing *Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 80 (D.D.C. 2009)); *Franklin v. Potter*, 600 F. Supp. 2d 38, 60 (D.D.C. 2009); *Ali v. D.C. Court Services*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd,* 98 Fed.Appx. 8 (D.C. Cir. 2004); *Hopkins v.*

The Accreditation Proof Concession is repeated, affirmed and ratified throughout

Defs.' Supp. Brief (at 1-2, 4, 6-8, 10-12).  The reiterated Accreditation Proof Concession

is dispositive.  *See Arizona v. Hicks*, 480 U.S. 321, 326 & n.* (1987) ("[T]his concession

precludes our considering whether the probable cause standard was satisfied in this

case."); *see also District of Columbia et al. v. Heller*, 128 S.Ct. 2783, 2819 (2008).[11]

At the very least, the reiterated Accreditation Proof Concession constitutes confirmation

of the "reasonable[ness]" of Plaintiff's argument that Individual Defendants must satisfy

Subdivision (1) of the Accreditation Statute.  *See Security Indus. Ass'n, et al. v. Board of*

*Governors of the Fed. Reserve Sys. et al.*, 468 U.S. 137, 168 (1984).[12]

---

*Women's Div., General Bd. of Global Ministries,* 238 F. Supp. 2d 174, 178 (D.D.C. 2002); *Stephenson v. Cox,* 223 F. Supp. 2d 119, 121 (D.D.C. 2002); *Day v. D.C. Dep't of Consumer & Regulatory Affairs,* 191 F. Supp. 2d 154, 159 (D.D.C. 2002); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002); *see also FDIC v. Bender,* 127 F.3d 58, 67-68 (D.C. Cir. 1997) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("'Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.'").

[11] In *Heller*, the Supreme Court declined to rule on the validity of a statutory requirement, given respondent's concession of its sustainability:

> Because Heller conceded at oral argument that the D.C. licensing law is permissible if it is not enforced arbitrarily and capriciously, the Court assumes that a license will satisfy his prayer for relief and does not address the licensing requirement.

*Ibid*.  The D.C. Circuit has joined the Supreme Court in treating a party's concession of a legal point as dispositive.  *See Ass'n of Am. Physicians & Surgeons v. Burwell*, 746 F.3d 468, 470-471 (D.C. Cir. 2014) (held that, because plaintiff-appellant conceded that the Affordable Care Act authorizes the policies adopted in the final regulation and the change requests, it forfeited its Origination Clause argument).  At least one other circuit is in accord.  *See Rodriguez v. Holder*, 724 F.3d 1147 (9th Cir. 2013) (". . . Galindo's concessions of removability before the [immigration judge] are binding and render the asserted change in the law immaterial."); *United States v. Cutler*, 676 F.2d 1245, 1248 (9th Cir. 1982); *Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978).

[12] In *Security Industries*, the Supreme Court noted the materiality of the challenging party's concession when it held that the Federal Reserve's interpretation of the subject statute was "reasonable":

Individual Defendants' twin-concessions in this connection (in July 2015 & now in Defs.' Supp. Brief) are consistent with controlling authority. *See Tuck v. Pan American Health Organization*, 668 F.2d 547, 550 n.7 (D.C. Cir. 1981) (according IOIA immunity to the individual defendant *only after* the Court held that he had carried his burden of proving that he had met the requirements of the Accreditation Statute). Defendants do not dispute that *Tuck* is apposite and controlling.[13]   Nor do they cite authority in conflict with *Tuck*.

Based on the foregoing, it is clear that the plain language of the Accreditation Statute and its interpretation by the Court, the parties and controlling authority require Individual Defendants to "satisfy the requirements set forth [ ] [in the Accreditation Statute], in order to obtain international official immunity under the IOIA[.]"  ECF No. 23, at 3 (Court Question 1).  The discussion below shows they do not.

## B.   Individual Defendants Fail To Prove That They Satisfy The Requirements Of The Accreditation Statute

In pertinent part,[14] the Accreditation Statute provides:

No person shall be entitled to the benefits of this subchapter, unless he (1) shall have been duly notified to and accepted by the Secretary of State . . . .

---

The Board concluded that commercial paper is not an "investment security," and therefore is not a "security," . . . , and that conclusion is at the very least a reasonable one.  Petitioners nowhere dispute the conclusion that commercial paper is not an investment security; *indeed, they effectively concede that it is correct*.

*Ibid.* (emphasis added).

[13] It would be disingenuous of Individual Defendants to do otherwise.  After all, they were the first in this action to rely on *Tuck*.  *See* ECF No. 4-1, at 11 & 12.  Since then, the Court too has acknowledged *Tuck* as apposite and controlling.  ECF No. 18, at 13-15.

[14] Conceded by Individual Defendants.  *See* Section II.A, *ante*.

1.   ***Individual Defendants Fail To Carry Their Conceded (And Court-Assumed) Burden Of Proving That They "Duly Notified" The Secretary Of State***

Individual Defendants' claim of Notification is based entirely on two alleged letters and one alleged attachment thereto:  Exhibit 24 (ECF No. 26-10), Exhibit 25 (ECF No. 26-11) and the supplemented Exhibit 24 (ECF No. 27-1) (collectively, "Exhibits"). None of the Exhibits is admissible because none is authenticated.  Fed. R. Evid. 901; *see* concurrently-filed objection; *see also Abdulaziz v. Metropolitan Dade Country*, 741 F.2d 1328, 1329-1330 (11th Cir. 1984) (acknowledging the potentially-preclusive effect of lack of proper authentication of immunity-related exhibits:  "as long as there is no genuine issue as to the authenticity of the original"); *United States v. Melekh*, 190 F. Supp. 67, 77-78 (S.D.N.Y. 1960) (court emphasizing "duly authenticated" nature of DoS certificate); *United States v. Enger*, 472 F. Supp. 490, 499 (D.N.J. 1978) (same).

Neither the alleged sender nor the alleged recipient of the Exhibits (alleged letters/attachment) has authenticated the Exhibits.[15]  Exhibits 24-25 (but not the supplemented Exhibit 24) are instead attached to the declaration of Individual Defendants' co-counsel.[16]  In light of the facts above, the Exhibits are inadmissible.

---

[15] Failure to authenticate the Exhibits may not be excused on the grounds of time constraints.  The Court doubled the response time initially allotted to Individual Defendants and their two attorneys of record.  *See* Minute Order of August 28, 2015. Also, Individual Defendants admit they have in-house lawyers.  ECF No. 26, at 6.

[16] Paul M. Levine, Esq., who attempts to introduce Exhibits 24-25 (not the supplemental Exhibit 24), does not testify or prove that he has "personal knowledge" of the alleged genesis or alleged dispatch of the two alleged letters.  Fed. R. Evid. 602.  Moreover, paragraphs 11-12 of Mr. Levine's declaration paragraphs do not attest that the attached documents (Exhibits 24-25) are "true and correct" copies.  Significantly, this authenticating phrase appears in every one of the preceding eight paragraphs (¶¶ 3-10) of Mr. Levine's declaration.  The supplemented Exhibit 24 (ECF No. 27-1) is not attached to *any* declaration, much less a competent one authenticating it.

Fed. R. Evid. 902; *see also Abdulaziz*, *supra*, 741 F.2d at 1329-1330; *United States v.*

*Melekh*, *supra*,190 F. Supp. at 77-78; *United States v. Enger*, *supra*, 472 F. Supp. at 499.

Stripped of the Exhibits, Defs.' Supp. Brief is not supported by any evidence of

Notification.[17]  Accordingly, Individual Defendants fail to carry their conceded (and

Court-assumed) burden of proof vis-à-vis Notification.[18]

In Subdivision (1) of the Accreditation Statute, the congressional inclusion of the

word "and" between "notified" and "accepted" renders these two statutory prongs

"conjunctive."  *See United States v. Vickery*, 199 F. Supp. 2d 1363, 1365-1366, 1371

(N.D. Ga. 2002) (citing *United States v. Clifford*, 197 F. Supp. 2d 516 (E.D. Va. 2002);

*United States v. Roberts,* 2001 WL 1646732 (S.D.N.Y. 2001); *United States v. Forbes,*

806 F. Supp. 232 (D. Colo. 1992)); *see also Sanders v. Molla*, 985 A.2d 439, 442 (D.C.

2009); *Lithium Corp. of Am., Inc. v. Town of Bessemer City*, 135 S.E.2d 574, 577 (N.C.

1964); *cf. Schneider v. Kissinger*, 412 F.3d 190, 193-194 (D.C. Cir. 2005).

Therefore, if one of the two prongs of Subdivision (1) of the Accreditation Statute

is not satisfied, the *entire* statute is not.  *Ibid.*

---

[17] At best, reference to the Exhibits constitutes part of counsel's "argument," not
"evidence."  *British Airways v. Boeing*, 585 F.2d 946, 952 (9th Cir. 1978); *Moura v.
Personal Business Advisors, LLC*, 2008 WL 4111411,*3 (W.D. Wash. 2008).
The counsel advancing said "argument," Mark Cymrot, Esq., does not claim to have any
"personal knowledge" of the alleged genesis or the alleged dispatch of the Exhibits.

[18] In a concurrently-filed motion, Plaintiff requests leave to conduct limited jurisdictional
discovery.  Good cause exists for granting said motion.  Individual Defendants have now
transformed their jurisdictional defense from a *facial* challenge to the Complaint to one
purportedly predicating Individual Defendants' immunity claim on alleged
communications with (or allegedly published, allegedly at Individual Defendants'
request, by) third parties, *e.g.*, the DoS, PIC, UNSC and/or White House.  In light of this
development, Plaintiff is fully entitled to discovery to complete the record.

As shown *ante*, Individual Defendants have failed to prove that they "notified" the Secretary of State.  They have, therefore, failed to satisfy the *entirety* of the "conjunctive" Subdivision (1) of the Accreditation Statute.  *Ibid*.  Accordingly, no further discussion of Acceptance is necessary to show that Individual Defendants are not entitled to IOIA immunity.  *Ibid*.  Notwithstanding, Plaintiff will assume *arguendo* that Notification exists and demonstrate below that Acceptance does not.[19]

> **2.     *Assuming Arguendo That Individual Defendants Had Proved Notification, They Have Failed To Carry Their Conceded (And Court-Assumed) Burden Of Proving That The Secretary of State "Accepted" Them***

>> **a.     The Record Does Not Disclose Any DoS Certification Of Acceptance**

The DoS informs a court of a defendant's immunity status via *direct and specific* intervention, *e.g.*, through a certificate from the office of its Chief of Protocol or a letter from its Legal Advisor, identifying the sender and the defendant, and including other evidentiary facts (such as the sender's "custody" and "diligent search" of the relevant DoS records).[20]  *See Enger*, *supra*, 472 F. Supp. at 499 (certificate from DoS Chief of Protocol regarding co-defendant's status vis-à-vis the Accreditation Statute ["Sections 288-288f-2 of title 22 of the United States Code"]);[21] *see also Carrera v.*

---

[19] Such an argument in the alternative in no way constitutes a waiver of Plaintiff's objection to Exhibits 24-25 and the supplemented Exhibit 24, which he reiterates herein. *See* concurrently-filed objection.  This alternative argument would be purely a supererogatory response, addressing Individual Defendants' arguments by counsel (*e.g.*, Defs.' Supp. Brief, at 2), not the Exhibits.  *See* n.17, *ante*.

[20] *Verlinden v. Central Bank of Nigeria*, 461 U.S. 480, 486-487 (1983) (DoS "ordinarily request[s] [restrictive FSIA] immunity in all actions against friendly foreign sovereigns").

[21] Such was the probative value of said certificate that the court quoted it in full:

*Carrera*, 174 F.2d 496 497 (D.C. Cir. 1949) (letter from DoS Legal Advisor submitted

*directly* to court); *Logan v. DuPuis*, 990 F. Supp. 26, 27 (D.D.C. 1997) (certificate from

DoS Assistant Chief of Protocol); *United States v. Arizdi*, 229 F. Supp. 53, 55 (S.D.N.Y.

1964) (certificate from DoS Deputy Chief of Protocol); *Melekh*, *supra*, 190 F. Supp. at

77-78 (certificate from DoS Acting Chief of Protocol);[22]*Diallo v. Maryland*, 994 A.2d

---

TO WHOM IT MAY CONCERN: This is to certify that I, Edith J. Dobelle, Chief
of Protocol, United States Department of State, am responsible for registering and
maintaining the records of the Department of State concerning the official status
of officers and employees of foreign governments in the United States who are
entitled to diplomatic immunity pursuant to Sections 252-254 of title 22 of the
United States Code of the Agreement between the United States and the United
Nations concerning the Headquarters of the United Nations, June 26, 1947, 61
Stat. 3416, TIAS 1676. I am also responsible for registering and maintaining the
records of the Department of State concerning the official status of representatives
in or to international organizations, and officers and employees of such
organizations, entitled to the privileges, exemptions and immunities granted by
Sections 288-288f-2 of title 22 of the United States Code or the Convention of
Privileges and Immunities of the United Nations, 21 U.S.T. 1418, TIAS 6900. I
further certify that such records are maintained under my custody in the District
of Columbia. I have caused diligent search to be made of such records and have
found no record which would indicate that Valdik A. Enger, a Soviet national
employed by the United Nations Secretariat, is notified to and recognized by the
Department of State in any capacity which would entitle him to diplomatic
immunity pursuant to the above-mentioned Sections 252-254 of title 22 of the
United States Code. I further certify that records in my custody do not reflect that
Mr. Enger is, or ever has been, the principal resident representative of a Member
of the United Nations under Section 15(1) of the Headquarters Agreement, or that
his name was ever notified to or accepted by the Department of State as a member
of the staff of such a representative under Section 15(2) of that agreement. I
further certify that the only records in the Department of State regarding the
official status of the said Mr. Enger list him as an employee of the United Nations
Secretariat, entitled to the privileges and immunities granted by Sections 288-
288f-2 of title 22 of the United States Code and Section 18(a) of the Convention
on Privileges and Immunities of the United Nations, 21 U.S.T. 1418, TIAS 6900.
Edith J. Dobelle (signature) Edith J. Dobelle Chief of Protocol Department of
State, Washington, July 7, 1978

*Ibid.*

[22] Such was the probative value of this certificate that the court quoted it in full:

820, 825 (2009) (certificate from DoS Deputy Assistant Chief of Protocol);[23] *Caravel*

*Office Building v. Peruvian Air Attache*, 347 A.2d 280, 282-283 (D.C. 1975) (DoS

certificate and letter submitted *directly* to court); U.S. Department of Justice Statement of

---

> This is to certify that I, H. Charles Spruks, Acting Chief of Protocol, Department of State, am responsible for registering and maintaining, and have custody of, the records of the Department of State pertaining to the official status of all officers and employees of foreign governments in the United States who are entitled to diplomatic immunity pursuant to Sections 252-254 of Title 22 of the United States Code. I further certify that such records are kept in the District of Columbia. I have caused diligent search to be made of such records and have found no record to exist that Mr. Igor Y. Melekh, a Soviet national employed by the United Nations Secretariat, is, or ever has been, notified to and recognized by the Department of State in any capacity which would entitle him to diplomatic immunity pursuant to the abovementioned Sections 252-254. I further certify that the only records ever received in the Office of Protocol regarding the said Mr. Melekh showed him to be an employee of the United Nations Secretariat, in which capacity he was entitled to immunity from suit and legal process only with respect to acts performed by him in his official capacity falling within his functions as an employee of the United Nations, as provided in Section 288d (b) of Title 22 of the United States Code. Signed this fourth day of November, 1960, at Washington, D.C. "(Signed) H. Charles Spruks H. Charles Spruks Acting Chief of Protocol.

*Ibid.*

[23] Such was the probative value of said certificate that the court quoted it in full:

> This is to certify that I, Holly S.G. Coffey, Deputy Assistant Chief of Protocol of the United States Department of State, am responsible for registering and maintaining the official records of diplomatic and consular officers, and other employees of foreign governments and international organizations in the United States and its territories and, in coordination with the United States Mission to the United Nations, of members of Permanent Missions to the United Nations and officials to the United Nations. The official records of the Department of State, including those of the United States Mission to the United Nations, indicate that Mr. Hama A. Diallo was notified by UN Secretariat to the United Nations in New York as a Special Representative of Secretary General (United Nations Conference on Environment and Development) on August 2, 1990. He served in that capacity until his assignment was terminated on June 22, 1993. At the time of Mr. Diallo's appointment, his son, Abdel Khader Diallo, was notified to the Department as a member of his family forming part of his household. Accordingly he is not entitled to diplomatic privileges and immunities in the United States.

*Ibid.*

Interest in *Tabion v. Mufti*, Case No. 94-1481-A (E.D. Va. January 27, 1995), at 2

(certificate from DoS Assistant Chief of Protocol).[24]

The authorities above (cited by Plaintiff *and* Individual Defendants), which relied

heavily on DoS statements regarding defendants' immunity status, establish DoS's

custom and practice in this regard. *See United States v. Williams*, 216 F. Supp. 2d 568,

571 (E.D. Va. 2002) (". . . a practice . . . [ ] tends to connote continuity, frequency,

repetitiveness, habit, or practice [ – ] that is, the word reflects a type, or manner, of using

something that transcends a single, or isolated, act of use.").

In marked contrast to this "practice" and custom, neither the DoS Chief of

Protocol's office nor the DoS Legal Advisor has submitted any document disclosing

---

[24] Individual Defendants have effectively conceded that, in immunity-centric litigation, courts rely heavily on DoS certificates confirming defendants' immunity status in the *direct, specific and official* manner described above. *See* Defs.' Supp. Brief, at 7 (Individual Defendants relying on *Dizdar*, *supra*, 581 F.2d at 1033, 1034-1035 [a DoS "Advisor" "testi[fied]" and introduced documentary evidence that the kidnapped individuals were "'persons of a foreign nationality who (had been) duly notified to the United States' as officers or employees of their government"]); at 10 (Individual Defendants relying on *Abdulaziz*, *supra*, 741 F.2d at 1329-1330 [immunity recognized on the strength of DoS certificate submitted directly to the district court]); at 9 (Individual Defendants relying on *Bernstein v. Nederlandsche-Amerikaansche, Stoomwaart-Maatschappij*, 210 F.2d 375, 376 (2nd Cir. 1954) [DoS Legal Advisor letter]). Individual Defendants attempt to backtrack from this concession by arguing that Acceptance is allegedly manifested by the fact that their names allegedly appear on a DoS "roster" as a result of their alleged Notification (which they have failed to prove [*see* Section II.B.1 *ante*]). Defs.' Supp. Brief, at 7-8. This argument suffers from several defects: **(1)** Individual Defendants cannot backtrack from their above-referenced concession that the Court requires a DoS certificate evidencing Acceptance (*see* n.35, *post*, for citations); and **(2)** even if they could retreat from said concession: **(a)** there is nothing in the record showing that Individual Defendants' names appear on the DoS "roster" they cite (ECF No. 26, at 7); and **(b)** OHR does not qualify as the "mission" they argue can be the beneficiary of this informal process (*id.*, at 8) because, as they concede, OHR is not located in the United States (*id.*, at 6 ["OHR is an entirely foreign operation."]), and Valentin Inzko, the alleged source of the alleged (unproved) Notification, does not qualify as "head of mission" because he too is extraterritorial (unlike a foreign state's ambassador to the United States).

Individual Defendants' alleged status vis-à-vis the Accreditation Statute.  The DoS has had at least ten months to do so.  *See* ECF No. 15.

Individual Defendants make no attempt to "explain [  ] deviations [in the instant case] from [DoS's] consistent practice" of immunity certification.  *Consolidated Bearings Co. v. United States*, 412 U.S. 1266, 1352 (2005).  Neither does the DoS. *Consolidated Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1352 (Ct. Intl. Trade 2008) (citing generally 2 Richard J. Pierce, *Administrative Law Treatise* § 11.5, at 817 (4th ed.2002)) ("There is a general principle of administrative law that 'an agency must either follow its own precedents or explain why it departs from them.'").

In light of the:  **(1)** DoS practice and custom in immunity litigation (established by the authorities cited by both Plaintiff *and* Individual Defendants); **(2)** the absence herein of:  **(a)** DoS certification of alleged Acceptance; and **(b)** any "explan[ation]" for this evidentiary void, Individual Defendants' fail to carry their conceded (and Court-assumed) burden of proving that they have been "accepted," pursuant to the Accreditation Statute.

  **b.**  **The *Ersatz* Sources Of Alleged Acceptance Proffered By Individual Defendants Do Not Constitute Acceptance**

Preliminarily, Plaintiff notes that Individual Defendants submit no testimony confirming that the documents referenced below constitute Acceptance.  For instance, there is no DoS declaration confirming that its thirteen-year old press release manifested its intent to allegedly "accept" Individual Defendants' alleged immunity which, according to them, was not even allegedly conferred until nine years later.

  **(i)**  **The PIC Statements  Do Not Constitute Acceptance**

Reasons follow.  First, the PIC does not exist legally.  Complaint, ¶ 16.  It is no more than a political construct, not even earning a single mention in the GFAP

(the unratified document OHR claims as its alleged constitutive instrument).  *Ibid.*

Individual Defendants did not dispute any of these Complaint allegations.  *See* ECF Nos.

4-1 & 7.  Accordingly, they are deemed true.  *American National Ins. Co. v. FDIC*, 642

F.3d 1137, 1139 (D.C. Cir. 2011).  Defs.' Supp. Brief does not oppose those arguments in

the Motion based on these uncontroverted Complaint allegations (even though the Supp.

Brief Order allowed Individual Defendants to do so[25]).  ECF No. 19-1, at 44.  Individual

Defendants' serial non-opposition to Plaintiff's arguments regarding the PIC's status

constitutes their repeated concession that the PIC is not a legal person and, therefore,

incapable of discharging legal acts.  *See* n.10, *ante*, for citations.  Said concession is

dispositive.  *See* p. 7, *ante*, for citations.  Not being a legal entity capable of discharging

legal acts, the PIC statements may not constitute the *legal* act of Acceptance.  Individual

Defendants, bearing the conceded (and Court-assumed) burden of proof, cite no authority

holding otherwise.

Second, the PIC is not an organ of the United States government.  Individual

Defendants concede this fact.  ECF No. 4-1.  Accordingly, PIC is devoid of any

congressional mandate to implement federal statutes, such as the Accreditation Statute.

Therefore, even assuming *arguendo* that the PIC subjectively intended its statements to

constitute Acceptance,[26] these would be *ultra vires*.  Defendants, the parties with the

conceded (and Court-assumed) burden of proof, cite no authority holding otherwise.

---

[25] Parties were not allowed to stray beyond the Court Questions unless "those other arguments are [ ] directly relevant to the questions raised above."  ECF No. 23, at 3. Surely Individual Defendants would not argue that PIC's status is "[ir]relevant" to their argument that PIC's statements are "relevant."  And yet, they remained silent yet again (for a third time) on the issue of PIC's nebulous status.

[26] Which it did not, as shown in the next three paragraphs.

Third, Individual Defendants adduce no evidence showing that the relevant Secretaries of State, Colin Powell and Hillary Clinton, delegated – or could legally delegate – the PIC to exercise *locum tenens* these most senior U.S. Cabinet officers' statutory authority under the Accreditation Statute. If General Powell and Mrs. Clinton had made such a delegation, that would have been tantamount to ceding to the PIC and its Steering Board, both of which boast Russia as a permanent member, a free hand in the administration of the DoS (in this case, the issuance of an acceptance pursuant to the Accreditation Statute). Individual Defendants, the parties with the conceded (and Court-assumed) burden of proof, present no evidence that such an alleged delegation, compromising national security and the DoS's independence, took place. Even if they had, Plaintiff is not aware of any authority sanctioning such a pernicious abdication of public trust in favor of a foreign entity (akin to what, in the nineteenth century "Age of Empire," would have been termed a "capitulation"). Certainly Defendants cite none.

Fourth, the PIC statements Individual Defendants cite/quote do not: **(1)** contain the words "accept" or "notified" (or their variants); **(2)** invoke the IOIA, generally, or the Accreditation Statute, specifically; or **(3)** advert to any records consulted by the PIC before allegedly issuing its alleged Acceptance. *Cf.* specificity of DoS certificates, *ante*. Individual Defendants, bearing the conceded (and Court-assumed) burden of proof, cite no authority holding that the PIC's vague, anemic statements may serve as Acceptance.

Fifth, Individual Defendants have no compunction about admitting that the PIC statements they cite/quote date back to 2002 and 2009 even as they, only two pages on, argue that: **(1)** OHR was not even allegedly accorded IOIA immunity until March 8,

2011 (date of the Executive Order); and **(2)** they did not allegedly "notify" the DoS of their affiliation with OHR until three months *or* four years after the Executive Order – on June 21, 2011 *or* August 13, 2015.[27]   ECF No. 26, at 1 & 4.   Viewing the matter in a light most favorable to Individual Defendants, the PIC accepted their immunity at a time when the latter did not even exist and when Individual Defendants were not even "notified to" the DoS.   Individual Defendants, the parties with the conceded (and Court-assumed) burden of proof, cite no authority holding that Acceptance may *precede* immunity and Notification – in the case of one PIC statement, *by nine years*.   ECF No. 26, at 2   While Plaintiff is familiar with the legal concept of anticipatory breach, he is not aware of any authority recognizing the fanciful notion of "anticipatory acceptance" ("Anticipatory Acceptance Fallacy") – and for good reason:   none exists.   Certainly Individual Defendants cite none.[28]

Based on the foregoing, Individual Defendants fail to carry their conceded (and Court-assumed) burden of proving that the PIC statements constitute Acceptance.

(ii)   **The UNSC Resolutions Do Not Constitute Acceptance**

The discussion above concerning the PIC statements applies with equal force to the UNSC resolutions cited/quoted by Individual Defendants.   Accordingly, it is

---

[27] *See* n.19, *ante.*

[28] In urging the Court to blaze a new trail by recognizing this chimera of "anticipatory acceptance," Individual Defendants are not only drawing the Court into reversible error; they are also advocating a precedent which would turn on its head venerable jurisprudence establishing the principles – and sequence – of offer-and-acceptance. The temporal inversion urged by Individual Defendants would, by way of illustration, mean that a car owner who has not even offered his vehicle for sale would be forced to transfer it to a third party only because the latter *sua sponte* issued an "acceptance" of the non-existent "offer of sale."   Such a rule would license larceny.

incorporated herein by this reference.  The only arguably qualitative difference is that the

UNSC's parent organization, the UN (but not the UNSC itself), possesses a juridical

personality; whereas the PIC does not.  This fine distinction, however, does not

compensate for the many other deficiencies the UNSC and its resolutions suffer from (in

the context of Individual Defendants) – in particular, the Anticipatory Acceptance

Fallacy.[29]  *See* PIC Statements section, *ante*.  Defendants fail to prove otherwise.

### (iii)      The DoS Press Releases Do Not Constitute Acceptance

Like the PIC statements and the UNSC resolutions, the DoS press

releases cited/quoted by Individual Defendants do not:  **(1)** contain the words "accept" or

"notified" (or their variants); **(2)** invoke the IOIA, generally, or the Accreditation Statute,

specifically; or **(3)** advert to any supporting records allegedly consulted by the DoS press

office prior to issuing the alleged Acceptance.  *Cf.* specificity of DoS certificates, *ante*.

Moreover, like the PIC statements/UNSC resolutions, the DoS press releases

suffer from the Anticipatory Acceptance Fallacy.  On the issue of timing, if DoS press

releases are deemed the DoS's "official views," as Individual Defendants argue (Defs.'

Supp. Brief, at 8-9), then the "official view" of DoS must be that there is no Acceptance,

since the record does not disclose a DoS press release regarding the Defendants issued

*after* the date of the Executive Order (March 8, 2011) or the dates on which they argue

they "notified" the DoS (June 21, 2011 & August 13, 2015).  *See* n.19, *ante*.

Additionally, the cited/quoted DoS press releases are anonymous.  *Cf.* the *signed*

DoS Chief of Protocol certificates, *ante*.  Presumably they were drafted by press officers.

---

[29] Individual Defendants incorrectly state that one of the cited UNSC resolutions was
adopted on March 5, 20**12** (Defs.' Supp. Brief, at 2).  In actuality, it was adopted on
March 5, 20**02** – no doubt just a scrivener's error.

The record does not disclose that said press officers:  **(1)** were lawyers; **(2)** had any familiarity with the IOIA, generally, or the Accreditation Statute, specifically; or **(3)** had reviewed the DoS records, if any, concerning Individual Defendants' alleged immunity status.  Put simply, the DoS press office is not a competent source of the legal act of Acceptance.  Individual Defendants fail to show otherwise.

Based on the foregoing, Individual Defendants fail to carry their conceded burden of proving that *pre*-Executive Order DoS press releases constitute Acceptance.

### (iv)     The Executive Order Does Not Constitute Acceptance

It does no more so than the PIC statements, the UNSC resolutions or the DoS press releases.  The reasons follow.  First, the Executive Order does not:  **(1)** name "Valentin Inzko" or "Jerome Ashdown;" **(2)** use the words "accept" or "satisfy" (or their variants)[30]; or **(3)** reference the Accreditation Statute.  *Cf.* the DoS certificates, *ante*.

---

[30] Presidents know how to say "accept" or "satisfy" in their executive orders. For "accept," *see* Executive Orders 10399 (September 27, 1952 – 17 Fed. Reg. 8648), 11435 (November 21, 1968 – 33 Fed. Reg. 17339), 11222 (May 8, 1965 – 30 Fed. Reg. 6469), 13490 (January 21, 2009 – 74 Fed. Reg. 4673); for "satisfies," *see* Executive Orders 13526 (December 29, 2009 – 75 Fed. Reg. 707), 12015 (October 26, 1977 – 42 Fed. Reg. 56947), 13522 (December 9, 2009 – 74 Fed. Reg. 66203).  **That President Obama did not use the ubiquitous words "accept" and "satisfy," so frequently employed by him and his predecessors in other executive orders, demonstrates: (1) that the words' omission in the Executive Order was intentional; and (2) that the Executive Order does not constitute the Acceptance, "satisf[ying]" the Accreditation Statute.** *See Whitfield v. United States*, 543 U.S. 209, 216 (2005); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476 (2003); *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996); *In re Hendrick*, 524 F.3d 1175, 1187  (11th Cir. 2008); *United States v. Fuller*, 531 F.3d 1020, 1027 (9th Cir. 2008).  **These precedents, highlighting the materiality of Congress' prior use of subsequently-omitted language, apply with equal force to the Executive Order.**  *Minnesota v. Mille Lacs Band of Chippewa Indians et al.*, 526 U.S. 172, 191 (1999) (construction rule re statutory severability applied to executive order); *Ex Parte Mitsuye Endo*, 323 U.S. 283, 298 (1944) ("We approach the construction of Executive Order No. 9066 as we would approach the construction of legislation in this field."); *Utely v. Varian Assoc., Inc.*, 811 F.2d 1279, 1285 (9th Cir. 1987); *Sutherland Statutory Construction*, § 31.06 (5th ed. Supp. 1998).

Second, the Executive Order suffers from the Anticipatory Acceptance Fallacy. Individual Defendants argue that they did not "notify" the DoS until June 21, 2011 and August 13, 2015 of "Valentin Inzko" and "Jerome Ashdown." *See* n.19, *ante*. However, the Executive Order – which allegedly "accepted" these alleged "notifications" – *was signed three months and fours years earlier, respectively*. Defendants cite no authority recognizing "acceptance" based on such an inverted sequence. *See* n.28, *ante*.

Third, Presidents are not in the habit of undermining their own hand-picked Secretaries of State by usurping their statutory authority. Individual Defendants offer no evidence or legal support for the proposition that the President allegedly shouldered aside then-Secretary of State Hillary Clinton – a constitutional officer, *expressly and exclusively* commissioned by Congress to implement the Accreditation Statute – to effect Acceptance himself via the Executive Order. Although superordinate to Secretaries of State, Presidents are obliged to respect the "division of labor" between themselves and their Secretaries of State. *See Zivotofsky v. Kerry*, 576 U.S. ___, ____ (2015) (slip op., at 26) (statute "requires the President, *through the Secretary [of State]*, to identify citizens born in Jerusalem . . . ." [emphasis added]); *Zemel v. Rusk* 381 U.S. 1, 7-12 (1985) (rather than impose passport issuance restrictions himself via executive order, President Franklin D. Roosevelt tasked, via an executive order, his Secretary of State to do so, consistent with the governing statute); *Marbury v. Madison*, 5 U.S. 137, 158 (1803).[31]

---

[31] "It is the duty of the Secretary of State to conform to the law, and in this he is an officer of the United States, bound to obey the laws. He acts, in this respect, as has been very properly stated at the bar, under the authority of law, and not by the instructions of the President. It is a ministerial act which the law enjoins on a particular officer for a particular purpose."

If this case genuinely implicated a foreign policy interest of the United States,[32]

the Secretary of State could have defended this just as easily as the President.  In fact, it

was her job to do so.  There was, therefore, no rational basis for Acceptance via the

Executive Order.  Individual Defendants fail to carry the burden of proving otherwise.

Fourth, the only natural persons adverted to in the Executive Order (generically)

are "officers and employees" of OHR.  Individual Defendants have already conceded

they are not "officers" or "employees" of OHR within the meaning of the Amendment or

the Executive Order.  ECF No. 7, at 6.[33]  In the Memorandum Opinion (ECF No. 18, at

n.8), the Court noted Defendants' Concession II (ECF No. 19-1, at 38).  Defendants'

Concession II is dispositive.  *See* p. 7, *ante*, for citations.[34]  Governing law does not

---

[32] Which is not the case, as evidenced by:  **(1)** the DoS's lack of intervention herein (even after a ten-month notice) or in *Sarkis v. OHR*; **(2)** the President's nine-month delay in signing the exiguous Executive Order (*see* ECF No. 19-1, at n.18); and **(3)** the absence in the record of any *post*-Executive Order DoS press releases/statements concerning Defendants.  *Cf.* Defs.' Supp. Brief, at 8-9 (arguing that DoS press releases represent DoS's "official view").  All the authorities cited by Individual Defendants in connection with the President's role in foreign policy (Defs.' Supp. Brief, at 4-5) involve foreign states, not entities such as OHR.  Organizations of an international public character, such as OHR, are not states.  *See U.S. v. Melekh*, *supra*, 190 F. Supp. at 89, n.1.  Accordingly, the above-referenced authorities are distinguishable.

[33] In said Reply, Individual Defendants argued that their alleged immunity *derived* from OHR's, not from the "offices and employees" provision of the Executive Order.  *Ibid.*  The Court expressly instructed Individual Defendants to establish their IOIA immunity on the independent basis of the Accreditation Statute, not derivatively (citing OHR as the source).  ECF No. 23, at 3.  This they have singularly failed to do, as shown in this brief.

[34] In Defs.' Supp. Brief, Individual Defendants make no attempt to dispute the facts/authorities underlying Defendants' Concession II, as outlined in Plaintiff's opposition to the motion to dismiss (ECF No. 6 at 38-42).  Accordingly, they have, through this latest non-opposition (in August 2015), affirmed and ratified Defendants' Concession II made in December 2014 (ECF No. 7, at 6).  *See* n.10, *ante*.

permit Individual Defendants to backtrack from Defendants' Concession II.[35]

Accordingly, Individual Defendants' attempt to squeeze themselves under the Executive

Order's rubric of "officers and employees" should be rejected. Individual Defendants fail

to cite any authority holding otherwise.

    In sum, Defendants, the parties with the conceded (and Court-assumed) burden of

proof, fail to carry it by showing that the Executive Order constitutes the Acceptance.

### C.   <u>Individual Defendants May Not Satisfy The Accreditation Statute Retroactively</u>

####     *1.   Individual Defendants Have Conceded – Twice – That It Is Their Status At The Time Of The Filing Of The Complaint Herein That Determines Whether Subject-Matter Jurisdiction Lies*

---

[35] *See, e.g., Eldred v. Reno*, 239 F.3d 372, 377-378 (D.C. Cir. 2001), *reh'g denied*, 255 F.3d 849, *aff'd, Eldred v. Ashcroft*, 123 S.Ct. 769 (2003) ("[O]ne cannot *concede* that the preamble 'is not a substantive limit' and *yet maintain* that it limits the permissible duration of a copyright." [emphasis added]); *I.L. v. State of Alabama*, 739 F.3d 1273, n.6 (and related extract in main text) (11th Cir. 2014) (admonition against "tolerat[ing]" parties' attempts to "backtrack" from prior concessions/stipulations out of "strategic[ ] expedien[cy]"); *United States v. Hines*, Case No. 14-1344 (10th Cir. Feb. 24, 2015); *Stewart v. Dutra Const. Co., Inc.*, 418 F.3d 32, 35 (5th Cir. 2005) ("It is too late in the day for Dutra to attempt to backtrack on this acknowledgment."); *Natural Resources Defense Council v. EPA*, 526 F.3d 591, 605-607 (9th Cir. 2008) (EPA rule overturned because: (1) it contradicted EPA's prior statutory interpretation; and (2) EPA provided no reasonable explanation for its shift in position on the interpretation of the subject statute); *U.S. v. Hartstein*, 557 F.3d 589, 590 (8th Cir. 2009); *TDM America, LLC. v. U.S.*, 100 F. Cl. 445, 492 (Fed. Cir. 2011) ("The Court also cannot embrace TDM's position because of the *contradictory arguments* of TDM's counsel before this Court and the PTO examiners" [emphasis added]); *Miller v. Office of Personnel Management*, 407 Fed.Appx. 446, 448-449 (Fed. Cir. 2011); *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 570, 1576 (Fed. Cir. 1995); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 421 (1971) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-169 (1962)) ("These affidavits were merely 'post hoc' rationalizations . . . which have traditionally been found to be an inadequate basis for review."); *American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1, 6 (D.C. Cir. 1987); *Carlton v. Babbitt*, 900 F. Supp. 2d 526, 531 (D.D.C. 1995); *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002).

*See* ECF No. 4-1, at 11-12 ("The immunity arises based upon *the time the Complaint was filed* and not when the activities alleged to give rise to the Complaint occurred" [emphasis added]).[36]  The Status Concession is conclusive and dispositive.  *See* p. 7, *ante*, for citations.  In July 2015, Individual Defendants repeated, affirmed and ratified the Status Concession (made in November 2014) when they failed to oppose Plaintiff's argument in the Motion that they had not satisfied the Accreditation Statute.[37]  ECF No. 19-1, at 38-39.  Individual Defendants may not backtrack from the repeated, affirmed and ratified Status Concession.  *See* n.35, *ante*, for citations.  As shown *ante*, Individual Defendants have failed to carry their conceded (and Court-assumed) burden of proving that they satisfied the Accreditation Statute at the time the Complaint was filed.

> **2.      *A Theoretical Future DoS Intervention Would Not Retroactively Confer Immunity On Individual Defendants*[38]**

---

[36] In support of this argument, Individual Defendants cited five authorities from the Supreme Court, the Second Circuit and this Court.  *Ibid*.

[37] *See* n.10, *ante*, for citations.

[38] Preliminarily, Plaintiff submits, with respect, that Court Question 3, which raises this question, raises a non-issue.  *Cf. Lake Carriers' Ass'n v. MacMullen*, 406 U.S. 498, 506 (1972) (ripeness); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (mootness).  At no time prior to the Supp. Brief Order had Individual Defendants ever argued that they satisfied the Accreditation Statute *after* the filing of the Complaint (or before, for that matter).  They chose silence instead.  The Court noted said silence.  ECF No. 23, at 2.  Accordingly, the question of alleged *retroactive* immunity, based on some hitherto-absent DoS intervention, was *not* an "adversarial issue[ ] presented" to the Court.  *Arias v. DynCorp*, 856 F. Supp. 2d 46, 51 (D.D.C. 2012) (quoting *Negley v. FBI*, 825 F. Supp. 2d 58, 60 (D.D.C. 2011)).  And certainly, at the time of the Supp. Brief Order, the record did not contain any facts even remotely suggesting *post-Complaint* satisfaction of the Accreditation Statute.  It still does not, as shown *ante*.  Therefore, Plaintiff submits, with respect, that Question 3 of the Supp. Brief Order, directing briefing on this "[non-]live controversy" (*Sandy Ealy v. Talmadge Littlejohn*, 569 F.2d 219, 234 (5th Cir. 1978)), constitutes an *ultra vires* "decision."  *Arias*, supra, 856 F. Supp. 2d at 51 (quoting *Negley*, *supra*, 825 F. Supp. 2d at 60).  Plaintiff is fully aware that, in cases where immunity may be a colorable defense, courts are obliged to exhibit solicitude by raising *sua sponte* arguments on behalf of a foreign entity which has *not* entered an appearance.

As a general matter, statutes may not have retroactive effect. *Landgraff v. USI Film Products, et al.*, 511 U.S. 244, 264-265 (1994). The same applies to "administrative rules." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). A creature of statute may not have a temporal reach longer than its creator's. Individual Defendants fail to show otherwise. Accordingly, if, in future, the DoS purports to issue, pursuant to the Accreditation Statute, an Acceptance in favor of Individual Defendants, such a half-compromised/half-improvised Acceptance may not take effect on or before June 30, 2014, the filing date of the Complaint herein (which date Individual Defendants concede determines whether subject-matter jurisdiction lies [*see ante*]).[39] *Ibid.*

### III. CONCLUSION

For the reasons above, dismissal of Individual Defendants should be reconsidered.

Respectfully submitted,

By: /s/ Zoran Zuza
Zoran Zuza
Zeljeznicka bb
71420 Pale
Bosnia & Herzegovina
+387-65-850-543 (Phone)
zzuzzazoran@yahoo.com
*Pro Se* Plaintiff

Date: September 10, 2015

---

*See Verlinden*, *supra*, 461 U.S. at 493; *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 67-68 (D.D.C. 2010). However, Plaintiff is not aware of any authority extending this informing principle to a case where, as here, a defendant has made multiple appearances *and* is represented (in this case, by not one but two outside counsel, as well as in-house lawyers). Notwithstanding, Plaintiff will comply with the Supp. Brief Order and address below the *wholly theoretical* issue of whether any future DoS intervention on behalf of Individual Defendants will divest the Court of subject-matter jurisdiction. He does, however, reserve the right to request leave to file supplemental briefing in the event such a currently-theoretical DoS intervention does, at some future date, purport to occur.

[39] Not only would such an *ex post facto* Acceptance be unsustainable (*see* n.4, *ante*); it may also subject the DoS to liability for damages to Plaintiff. *Ibid.*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 10, 2015, the foregoing Plaintiff's Supplemental Brief in Support of His Motion for Reconsideration was filed with the Clerk of the Court via the CM/ECF system, causing it to be served upon all counsel of record.

<u>/s/ Zoran Zuza</u>
Zoran Zuza