**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ZORAN ZUZA, | ) | |
| | ) | |
| Plaintiff, in *Pro Se*, | ) | |
| | ) | |
| v. | ) | Civil No. 1:14-cv-01099 |
| | ) | |
| OFFICE OF THE HIGH | ) | Per Scheduling Minute Order of |
| REPRESENTATIVE *et al*. | ) | November 23, 2015 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO THE STATEMENT OF
INTEREST SUBMITTED BY THE UNITED STATES OF AMERICA**

Plaintiff Zoran Zuza hereby responds to the Statement of Interest (ECF No. 41)

("SoI") submitted by the United States of America ("U.S.") in response to the Request for

Statement of Interest (ECF No. 33) ("Request for SoI").  Concurrently herewith, Plaintiff

submits an evidentiary objection to the two exhibits attached to the SoI ("Objection").

## I.  INTRODUCTION

After a year of pregnant silence, the U.S. has entered an appearance.  The laconic

SoI, however, fails as a lifeline to Defendants Valentin Inzko and Jerome Ashdown

(collectively, "Individual Defendants").  It acts instead as an anchor, taking their

arguments to the bottom.  Simply put, the SoI at once proves nothing *and* too much.

It proves nothing because the government's assertions are not supported by

evidence.  The SoI's exhibits are unauthenticated and, therefore, inadmissible.

Plaintiff notes that Individual Defendants likewise failed to authenticate their exhibits.

The SoI also proves nothing because it is an arbitrary departure from custom and

practice, as well as a "*post hoc* rationalization."  Courts reject such dubious advocacy.

What the SoI does prove, however, is that Individual Defendants' supplemental brief (ECF No. 26) ("Defs.' Supp. Brief") is meritless. The former – SoI – cites *none* of the documents/authorities relied on in the latter – Defs.' Supp. Brief. If not even the U.S. subscribes to Defendants' factual narrative and legal argument, neither should the Court.

The SoI is also probative in that it echoes Individual Defendants' concession that they must satisfy 22 U.S.C. § 288e(a) ("Accreditation Statute") before any alleged immunity[1] is activated.

The SoI's utility extends far beyond confirming Individual Defendants' heavy burden of proof and the spuriousness of Defs.' Supp. Brief. The U.S. has in fact proved that the *entirety* of Plaintiff's motion for reconsideration (ECF No. 19) ("Reconsideration Motion") is meritorious. It did so by conceding all of Plaintiff's arguments therein that Defendants are not entitled to immunity under the International Organizations Immunities Act ("IOIA").[2] This concession arose, by operation of law, from the three-page SoI's non-opposition to said arguments, posited in the 88 pages of the Reconsideration Motion, the associated reply (ECF No. 22) and Plaintiff's supplemental memorandum in support of the Reconsideration Motion (ECF No 29). The U.S. had notice of said pleadings, not least because the Request for SoI expressly drew its attention to them. No legal impediment prevented the U.S. from briefing the underlying issues, which it has elected instead to ignore, despite having had ample time to prepare the SoI.

The government's reticence at once mirrors and spotlights the yawning gaps left by Defendants' own serial non-oppositions to Plaintiff's multiple arguments regarding

---

[1] That no such immunity subsists has been established. *See* ECF Nos. 19 & 22.

[2] Pub. L. No. 291, 59 Stat. 669 (1945) (codified as amended at 22 U.S.C. §§ 288-288f).

the IOIA, the relevant amendment thereto[3] ("Amendment") and the Accreditation Statute.[4]  It seems that, even after 2.5 months of consultation among "multiple entities within the Executive Branch"[5] – and, no doubt, with Defendants – the U.S. has deemed it more expedient to join Defendants in skirting the issues – even at the cost of augmenting a record already favoring Plaintiff.  The SoI is clearly devoid of substance.[6]  Section I, for instance, is virtually a verbatim regurgitation of Section IV.A of the Memorandum Opinion (ECF No. 18).  The U.S., it seems, favors "talismanic repetition" over engagement with the issues.  Courts see through such ingratiating legerdemain, not to mention the temporization that preceded it.  And, as stated *ante*, Section II of the SoI is no more than conclusory optics.  The government's desertion of Defendants confirms they do not enjoy IOIA immunity.[7]

The SoI is not entitled it to any deference, notwithstanding the proliferation of the emotive word "immunity" in this action.  First, the U.S. does not assert that the Court's exercise of jurisdiction herein would compromise the foreign relations of the U.S.  Second, the Supreme Court teaches that the U.S. should play no "role in determinations

---

[3] Pub. L. 111–177, 124 Stat. 1260 (2010) (codified at 22 U.S.C. § 288f–7).

[4] Defendants' memorandum in opposition to the ***45-page*** motion for reconsideration (ECF No. 21) spans all of ***three pages***.

[5] ECF No. 38, at 2.

[6] As shown below, U.S. statements of interest are characteristically comprehensive, analytical and lengthy.  The SoI, therefore, stands in isolation.  Its exiguity is particularly incongruous – and instructive – given that it contrasts starkly with the 88 pages Plaintiff devoted to his reconsideration-related arguments.  *See* ECF Nos. 19, 22 & 29.

[7] The only reasonable inference from the palpable evasion, quiescence and inertia exhibited throughout by both the U.S. and Defendants is that even these parties recognize that good cause exists for reconsideration.

regarding individual official immunity" in actions such that at bar.  And lastly, the U.S.

has judicially admitted that a statement of interest is no more than an *amicus curiae* brief.

The SoI, therefore, is not talismanic, much less preemptive.

In light of the foregoing, the SoI should be rejected.

## II.  LEGAL STANDARD

The U.S. has judicially admitted that "[t]he submission of a Statement of Interest

. . . *is the equivalent of an amicus curiae*."  Second Statement of Interest in *Rubin et al.*

*v. The Islamic Republic of Iran et al.*, Case No. 03-cv-9370 (N.D. Ill. March 3, 2006)

("*Rubin*"), ECF No. 145, n.1 (citing *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249,

1252-1253 & n.5 (D.C. Cir. 2002)) (emphasis added).  Said concession is dispositive.[8]

Via another statutory immunity scheme, *i.e.*, the Foreign Sovereign Immunities

Act (codified at 28 U.S.C. § 1602 *et seq.*) ("FSIA"), both Congress and the Supreme

Court have made pellucid that, on questions of *statutory* immunity, courts may not defer

to the Executive Branch's opinions/statements.  *See, e.g.*, 28 U.S.C. § 1602 (1994)

(Foreign states' claims to immunity "[w]ould henceforth be decided by courts of the

United States and of the States in conformity with the principles set forth in this

chapter.") & § 1603 (a)-(e) (FSIA definitional criteria excluding any provision for

Executive Branch input/certification); *Republic of Austria v. Altmann*, 541 U.S. 677, 691

---

[8] *See Arizona v. Hicks*, 480 U.S. 321, 326 & n.* (1987); *District of Columbia et al. v. Heller*, 128 S.Ct. 2783, 2819 (2008); *Ass'n of Am. Physicians & Surgeons v. Burwell*, 746 F.3d 468, 470-471 (D.C. Cir. 2014); *Rodriguez v. Holder*, 724 F.3d 1147 (9th Cir. 2013); *United States v. Cutler*, 676 F.2d 1245, 1248 (9th Cir. 1982); *Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978); *see also Security Indus. Ass'n, et al. v. Board of Governors of the Fed. Reserve Sys. et al.*, 468 U.S. 137, 168 (1984).

(2004) (The FSIA "transfers primary responsibility for immunity determinations from the Executive to the Judicial Branch.").[9]

It is only in the context of **common law** immunity that the Executive Branch plays a "role in determinations regarding individual official immunity." *Samantar v. Yousuf*, 130 S.Ct. 2278, 2291 (2010) (FSIA).[10]

### III.  ARGUMENT

#### A.  The SoI Is Not Entitled To Deference

The SoI is no more than an *amicus curiae* brief. *See* Section II, *ante*.

Moreover, as Defendants have invoked a statutory scheme – *i.e.*, the IOIA – the U.S. may **not** play "a role in [the Court's] determination[ ] regarding" Individual Defendants' alleged immunity. *Ibid.* This conclusion is compelled herein *a fortiori* because the U.S. identifies no aspect of this action which affects its foreign relations. The government's silence comes as no surprise.

The record already reflects that:  **(1)** for nine months, President Barack Obama was clearly not moved by any foreign policy imperative to sign Executive Order 13,568 ("Executive Order");[11] **(2)** for a year, the U.S. was clearly not moved by any foreign

---

[9] The IOIA is analogous to the FSIA. *See Nokalva v. European Space Agency*, 617 F.3d 756, 762-765 (3rd Cir. 2010). Therefore, the legal standards governing the FSIA likewise govern the IOIA. *See Puerto Rico Ports Authority v. Umpierre Solares*, 456 F.3d 220, 227 (1st Cir. 2006) ("...we look to the limitations period contained in the most analogous federal or state statute in order 'to establish burdens of proof and presumptions of timeliness and untimeliness,' . . .").

[10] *See* n.9, *ante*.

[11] The Amendment was enacted on June 3, 2010.  The Executive Order was not signed until March 8, 2011.

policy imperative to react to the instant action;[12] and **(3)** for three years, the U.S. was clearly not moved by any foreign policy imperative to submit a statement of interest in *Sarkis v. Lajcak et al.*, No. C-08-01911, 2009 WL 3367069 (N.D. Cal. Oct. 15, 2009), *aff'd* 425 F. App'x  557, 559 (9th Cir. 2011) ("*Sarkis v. OHR*").[13]

Moreover, neither the U.S. nor Defendants have cited any authority holding that a U.S. court's exercise of jurisdiction over an international organization – as opposed to a foreign state – affects the foreign relations of the U.S.  The absence of such authority is *a fortiori* material here, where:  **(1)** Defendant Office of the High Representative ("OHR") is not headquartered in the U.S.; and **(2)** the record does not reflect that the U.S. intends to attract OHR's headquarters to its shores.  *See* ECF No. 19-1, at 32-37.[14]

Against this backdrop, it is little wonder that the SoI is silent on the subject of its foreign relations.

Instead of deferring to the conclusory statements of a government whose interests seem not be affected by the instant action, justice would be better served if the Court were to confine its review to the IOIA, its interpretation by the courts and the evidence. These all favor Plaintiff, as Defendants have conceded on multiple occasions (via non-opposition to his arguments).  *See*, *e.g.*, ECF Nos. 19, 21, 22, 26 & 29.

---

[12] *See* ECF No. 15.  (Defendants concede that, consistent with Fed. R. Civ. P. 4(i)(1)(C), the U.S. was served with notice of this action on December 5, 2014.  *See* ECF No. 16.) It should also be borne in mind that the U.S. did not submit the SoI until after it was requested to do so by the Court.  *See* ECF No. 33.  Even then, the U.S. temporized. *See* ECF No. 38.  The government's manifest indifference to this action speaks volumes.

[13] Either in the district court or in the Ninth Circuit.

[14] These and other references herein to the page numbers of ECF No. 19-1 are to those appearing at the bottom of said submission, not the ECF page notations atop.

The U.S. too has conceded the merits of Plaintiff's arguments by not opposing them after being placed on notice of them by, among others, the Court.  *See* Section III.D, *post*. Said concession is dispositive.  *See* n.8, *ante*, for citations.

Assuming *arguendo* the SoI were, in principle, entitled to deference, this could not disguise the SoI's conclusory and unpersuasive nature.[15]  As shown below, the government's sweeping conclusions are:  **(1)** unsupported by evidence; **(2)** arbitrary; and **(3)** dilatory to the point of constituting "*post hoc* rationalization[s]."

**B.**     **The U.S. Fails To Prove That Individual Defendants Have Satisfied The Accreditation Statute**

Preliminarily, Plaintiff notes that the U.S. joins Individual Defendants in conceding that, of the three subdivisions of the Accreditation Statute, only one applies to Individual Defendants:  Subdivision (1).  *See* ECF No. 41, at 2-3; ECF No. 26, at 1-2, 4, 6-8, 10-12.  The U.S. also joins Individual Defendants in conceding that the latter must satisfy said subdivision before enjoying IOIA immunity (assuming *arguendo* such immunity subsists in the first place[16]).  *Ibid.*

**1.**     ***The SoI Is Not Supported By Evidence***

The U.S. adduces no evidence of "notif[ication]" and "accept[ance]."  *See* the Objection.  Exhibits A and B to the SoI are unauthenticated and, therefore, inadmissible.

---

[15] For instance, the U.S. offers no more than a regurgitation of Section IV.A of the Memorandum Opinion (ECF No. 18).  ECF No. 41, Section I.  Courts look past such "talismanic repetition" (*United States v. Ballinger*, 312 F.3d 1264, 1270 (D.C. Cir. 2002)), designed to exalt optics over substance.  *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984) ("10,000 repetitions are [not] as good as the truth.").

[16] It does not.  *See* ECF Nos.19 & 22.  Neither the U.S. nor Defendants opposed any of Plaintiff's arguments in this regard.  *See* Section III.D. *post*.  Accordingly, all four parties are deemed to have conceded same.  *Ibid.*  Their concessions are dispositive.  *See* n.8, *ante*, for citations.

Accordingly, the U.S. fails to establish that Individual Defendants satisfy Subdivision (1) of the Accreditation Statute.

As the word "and" appears between "notified" and "accepted" in Subdivision (1), the latter is worded in the conjunctive.[17]   Therefore, even assuming *arguendo* the U.S. had authenticated proffers of ***either*** "notif[ication]" ***or*** "accept[ance]," it still would have failed to prove that Individual Defendants have satisfied Subdivision (1) of the Accreditation Statute.   *Ibid.*

The government's failure to authenticate the SoI's exhibits may not be ascribed to time constraints or under-staffing.   The U.S. has had ***at least 2.5 months*** to prepare the SoI.[18]   Its signature page indicates that ***four*** Department of Justice ("DoJ") attorneys collaborated in the SoI's preparation.   These facts make clear that the government's failure to authenticate was no mere oversight.   It was intentional.[19]   The government's reluctance to commit itself herein – even to the point of creating a self-lacerating evidentiary lacuna – suggests acute tremulousness on its part to champion Individual

---

[17] *See United States v. Vickery*, 199 F. Supp. 2d 1363, 1365-1366,1371 (N.D. Ga. 2002) (citing *United States v. Clifford,* 197 F. Supp. 2d 516 (E.D. Va. 2002); *United States v. Roberts,* 2001 WL 1646732 (S.D.N.Y. 2001); Pueblo of Santa Ana v. Kelly, 932 F. Supp. 1284, 1292 (D. N. Mex. 1996); *United States v. Forbes,* 806 F. Supp. 232 (D. Colo. 1992)); *see also Sanders v. Molla*, 985 A.2d 439, 442 (D.C. 2009); *Lithium Corp. of Am., Inc. v. Town of Bessemer City*, 135 S.E.2d 574, 577 (N.C. 1964); *cf. Schneider v. Kissinger*, 412 F.3d 190, 193-194 (D.C. Cir. 2005).

[18] This is a conservative estimate.   The U.S. was served with notice of this action on December 5, 2014.   ECF No. 15.   Defendants concede said service.   ECF No. 16.

[19] Individual Defendants likewise failed to authenticate their exhibits allegedly relating to the Accreditation Statute.   *See* ECF No. 31.   That both the U.S. and Individual Defendants have elected not to satisfy the rudimentary evidentiary requirement of authentication suggests a common design to avoid engagement with the facts.

Defendants.  If the U.S. subscribed to its own narrative that Individual Defendants

satisfied the Accreditation Statute, it would not have demurred so.

> **2.**      ***The SoI Is Arbitrary Because The U.S. Has Deviated Therein From Its Custom And Practice In Immunity Cases And Fails To Explain Why***

"There is a general principle of administrative law that 'an agency must either

follow its own precedents or explain why it departs from them.'"  *Consolidated Fibers,*

*Inc. v. United States*, 535 F. Supp. 2d 1345, 1352 (Ct. Intl. Trade 2008) (citing generally

2 Richard J. Pierce, *Administrative Law Treatise* § 11.5, at 817 (4th ed.2002)).  When the

government departs from its customary procedure, courts look to it to "explain [  ]

deviations from [its] consistent practice."  *See Consolidated Bearings Co. v. United*

*States*, 412 F.3d 1266, 1352 (Fed. Cir. 2005).  Courts enjoin arbitrary departures from

past practice on the part of the government.  *See, e.g., Consol. Bearings Co. v. United*

*States,* 348 F.3d 997, 1005-1006 (Fed. Cir. 2003).

"[A] practice . . . [ ] tends to connote continuity, frequency, repetitiveness, habit,

or practice [ – ] that is, the word reflects a type, or manner, of using something that

transcends a single, or isolated, act of use."  *See United States v. Williams*, 216 F. Supp.

2d 568, 571 (E.D. Va. 2002).

> **a.**      **The U.S. Has Established Its Custom And "Practice" In Legal Actions Giving Rise To Immunity Accreditation Issues**

The government's five sets of custom and practice follow:

**(1)** The DoS customarily submits a certificate within a reasonable period of time

after it learns of a legal action implicating immunity issues.  *See, e.g., Abdulaziz v.*

*Metropolitan Dade County*, 741 F.2d 1328, 1331 (11th Cir. 1984); *United States v. Enger*,

472 F. Supp. 490, 499 (D.N.J. 1978); *Logan v. DuPuis*, 990 F. Supp. 26, 27, 28 (D.D.C.

1997); *United States v. Arizdi*, 229 F. Supp. 53, 55 (S.D.N.Y. 1964); *United States v. Melekh*, 190 F. Supp. 67, 70, 73, 77-78 (S.D.N.Y. 1960); *Diallo v. Maryland*, 994 A.2d 820, 825 (2009); *Caravel Office Building v. Peruvian Air Attaché*, 347 A.2d 280, 282-283, Appendix (D.C. 1975); *see also Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949).

In all the above-cited cases, the DoS acted promptly.  In none did it delay ***for a year***  the issuance of immunity-related certificates.  Indeed, the DoS has "frequen[tly]"[20] issued such certificates on only a ***few days' notice***.  *See*, *e.g. Abdulaziz*, *supra*, 741 F.2d at 1331 (DoS certificate re immunity issued *even before* defendant filed motion to dismiss); *Caravel*, *supra*, 347 A.2d at Appendix (court requested DoS input on June 5, 1975; DoS letter issued on June 11, 1975); *Melekh*, *supra*, 190 F. Supp. at 70, 73, 77-78 (S.D.N.Y. 1960) (indictment filed on October 27, 1960; DoS certificate re immunity status issued on November 4, 1960).

**(2)** It is the government's custom and practice to make its views known to courts in cases where its interests are implicated.  28 U.S.C. § 517.

**(3)** As statements of interest are designed to protect the interests of the U.S. (*id.*), it is the custom and practice of the U.S., ***in cases of which it is aware***, to file such statements of interest *sua sponte*, ***without awaiting a request from the Judicial Branch***. *Ibid.*; *see also* statements of interest in:  **(a)** *Thorpe et al. v. District of Columbia*, Case No. 10-cv-02250 (D.D.C. June 26, 2013) ("*Thorpe*"), ECF No. 32; **(b)** *National Association of the Deaf et al. v. Massachusetts Institute of Technology*, Civil Action No. 3:15-cv-30024-MGM (D. Mass. June 25, 2015) ("*National Association I*"), ECF No. 34;

---

[20] *Williams*, *supra*, 216 F. Supp. 2d at 571.

(c) *Rubin*, *supra*, ECF No. 145; and (d) *Rosen v. Japan*, Case No. 01-cv-06864 (N.D. Ill. March 20, 2003) ("*Rosen*"), ECF No. 47.

(4) As statements of interest are designed to protect the interests of the U.S. (28 U.S.C. § 517), it is the custom and practice of the U.S. to file its statements of interest promptly. *See*, *e.g.*, statements of interest in:  (a) *Thorpe*, *supra*, ECF No. 32 (U.S. filed statement of interest re opposition to summary judgment motion within ***one month*** of said opposition's filing); (b) *National Association I*, *supra*, ECF No. 34 (U.S. statement of interest filed within four months of complaint); and (c) *National Association of the Deaf et al. v. Harvard University*, Civil Action No. 3:15-cv-30023-MGM (D. Mass. June 25, 2015) ("*National Association II*"), ECF No. 31 (U.S. statement of interest filed within four months of complaint).

(5) As statements of interest are designed to protect the interests of the U.S. (28 U.S.C. § 517), it is the custom and practice of the U.S. to ensure that such submissions are comprehensive, penetrating, analytical and expansive. *See*, *e.g.*, U.S. statements of interest in:  (a) *Rosen*, *supra*, ECF No. 47 ***(30 pages)***; (b) *National Association I*, *supra*, ECF No. 34 ***(26 pages)***; (c) *National Association II*, *supra*, ECF No. 31 ***(26 pages)***; (d) *Thorpe*, *supra*, ECF No. 109 ***(nineteen pages)*** (e) *Rubin*, *supra*, ECF No. 20 ***(fifteen pages)***; and (f) *Sadikoglu v. United Nations Development Programme*, Case No. 11-cv-00294-PKC (S.D.N.Y., July 6, 2011), ECF No. 40 ***(thirteen pages)***.

### b.  In The Instant Action, The U.S. Has Deviated From The Sets Of Custom And Practice Outlined Above

Pursuant to Fed. R. Civ. P. 4(i)(1)(C), Plaintiff served the U.S. with notice of this action on December 5, 2014.  ECF No. 15.  Defendants concede said service of notice. ECF No. 16.

Contrary to its custom and practice (*see* pp. 9-10, *ante*), the DoS did not, at any time during the weeks – or even months – following the above-referenced service, submit any certification relating to Individual Defendants vis-à-vis the Accreditation Statute. Indeed, the DoS has not done so at any time during the past year. *See* Objection.

Contrary to its custom and practice (*see* pp. 10-11, *ante*), the U.S. did not submit the SoI for nearly one year (between December 5, 2014 and November 19, 2015).

Contrary to its custom and practice (*see* p. 11, *ante*), the U.S. did not react to this action, of which it has had lengthy notice (*see* introductory paragraph of this section), until prompted by the Request for SoI.[21]  ECF Nos. 33 & 38.

Contrary to its custom and practice (*see* p. 11, *ante*), the U.S. opted for uncharacteristic taciturnity.  The three-page SoI marks a departure from the government's typically penetrating and thorough factual and legal analysis.  Said inconsistency is particularly probative here, where: **(1)** the Plaintiff's corresponding submissions spanned 88 pages (*see* ECF Nos. 19, 22 & 29); and **(2)** the Court highlighted the significance of said pleadings by expressly drawing the government's attention to them.  ECF No. 33, at 1-2.

> **c.     The U.S. Offers No Explanation For Its Above-Referenced Departures From The Government's Custom And Practice, As Outlined On Pages 9-11, *Ante***

The SoI is silent as to why two of the government's agencies – the DoS and the DoJ – departed, in the case at bar, from custom and practice.  As the U.S. has:

---

[21] And even then, the U.S. only entered an appearance to request two months – in addition to the ten it already had – to decide on whether or not to respond.  ECF No. 38, at 1-2.

(1) deviated herein – ***not once but several times*** – from its custom and "practice" [22] in

immunity cases; and (2) failed to explain why, the SoI should be rejected as "arbitrary."

*See Consolidated Bearings*, *supra*, 412 F.3d at 1352; *Consol. Bearings, supra*, 348 F.3d

at 1005-1006; *Consolidated Fibers*, *supra*, 535 F. Supp. 2d at 1352.

> **3.     *The SoI Should Also Be Rejected On The Grounds That It Constitutes A "Post Hoc Rationalization"***

The Supreme Court and the D.C. Circuit reject factual analysis and/or legal

arguments by U.S. agencies designed to justify governmental positions taken ***after*** the

initial governmental review.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401

U.S. 402, 421 (1971) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156,

168-169 (1962)) ("These affidavits were merely 'post hoc' rationalizations . . . which

have traditionally been found to be an inadequate basis for review.");[23] *American Horse

Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1, 6 (D.C. Cir. 1987) ("We are adjured to take a

critical view of an agency's 'post hoc rationalization,' . . . ."); *see also Carlton v. Babbitt*,

900 F. Supp. 2d 526, 531 (D.D.C. 1995) ("The Court may not rely on a party's *post hoc*

rationalizations where no rationale was set forth before."); *Common Sense Salmon

Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002); *see also Citizens Advocates for

Responsible Expansion, Inc. v. Dole*, 770 F.2d 423, 434 (5th Cir. 985) (stating that

"evidence made or offered after [an agency's] decision . . . has been reached to

support that decision must be viewed critically and ordinarily cannot constitute part of the

---

[22] *Williams*, *supra*, 216 F. Supp. 2d at 571.

[23] One court has defined *post hoc* rationalization as "an effort by agency staff, after an agency has made a decision, to find supporting reasons and data that the agency itself, before the event, might have considered irrelevant or unpersuasive."  *City of Waltham v. United States Postal Service*, 11 F.3d 235, 241 (1st Cir. 1993) (citing *Overton*, *supra*, 401 U.S. at 419).

administrative record").

The SoI constitutes just such a proscribed *post hoc* rationalization. As shown in the preceding section, during the entire year that the U.S. was on notice of this action, the DoS did not certify Individual Defendants as "notified" and "accepted," pursuant to the Accreditation Statute. Nor did the U.S. submit herein any statement of interest between December 5, 2014 and November 19, 2015. Now that it has done so – at the behest of the Court – the U.S. takes a position therein which the DoS and the DoJ declined to take over the preceding year. "The Court may not rely on a party's *post hoc* rationalizations where no rationale was set forth before." *Carlton*, *supra*, 900 F. Supp. 2d at 531. The laggard and externally-prompted SoI constitutes just such a *post hoc* rationalization, contradicted by and irreconcilable with the anterior governmental silence. *Ibid.*; *see also Smiley v. Citibank (South Dakota), Nat'l Ass'n*, 517 U.S. 735, 742 (1996) (proscribing an agency's "sudden and unexplained [contradiction of earlier position]"[24]).

---

[24] The government's silence in the face of Plaintiff's challenge over the past year to Individual Defendants' alleged immunity is construed as an affirmative legal position particularly as the U.S. has been on notice of said challenge throughout (ECF Nos. 15-16). *See* LCvR 7(b); *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("'Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.'")); *Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*, 901 F. Supp. 2d 19, 37-38 (D.D.C. 2012) (citing *Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 80 (D.D.C. 2009)); *Franklin v. Potter*, 600 F. Supp. 2d 38, 60 (D.D.C. 2009); *Ali v. D.C. Court Services*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed.Appx. 8 (D.C. Cir. 2004); *Hopkins v. Women's Div., General Bd. of Global Ministries,* 238 F. Supp. 2d 174, 178 (D.D.C. 2002); *Stephenson v. Cox,* 223 F. Supp. 2d 119, 121 (D.D.C. 2002); *Day v. D.C. Dep't of Consumer & Regulatory Affairs,* 191 F. Supp. 2d 154, 159 (D.D.C. 2002); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).

The U.S. offers no "expla[nation]" for the disconsonance between the SoI and the DoS/DoJ's pregnant silence over the preceding year. That the SoI constitutes a "sudden" change in the government's position is evidenced by the fact that it – the *very first* U.S. submission herein – breaks the government's year-long silence. As the government's "[un]explain[ed]" and "sudden" change in position gives rise to a *post hoc* rationalization, the SoI should be rejected. *Smiley*, *supra*, 517 U.S. at 742; *Citizens to Preserve Overton Park*, *supra*, 401 U.S. at 421; *Burlington*, *supra*, 371 U.S. at 168-169; *American Horse Protection* Ass'n, *supra*, 812 F.2d at 6; *Common Sense Salmon Recovery*, *supra*, 217 F. Supp. 2d at 20.[25]

If the SoI is not rejected, its only remaining utility herein would be to discredit Defs.' Supp. Brief.[26]

---

[25]  *See also Eldred  v. Reno*, 239 F.3d 372, 377-378 (D.C. Cir. 2001), *reh'g denied*, 255 F.3d 849, *aff'd*, *Eldred v. Ashcroft*, 123 S.Ct. 769 (2003) ("[O]ne cannot *concede* that the preamble 'is not a substantive limit' and *yet maintain* that it limits the permissible duration of a copyright." [emphasis added]); *I.L. v. State of Alabama*, 739 F.3d 1273 n.6 (and related extract in main text) (11th Cir. 2014) (lower courts admonished not to "tolerate" parties' attempts to "backtrack" from prior concessions/stipulations out of "strategic[ ] expedien[cy]"); *United States v. Hines*, Case No. 14-1344 (10th Cir. Feb. 24, 2015) (rejecting contradictory equitable tolling arguments); *Stewart v. Dutra Const. Co., Inc.*, 418 F.3d 32, 35 (5th Cir. 2005) ("It is too late in the day for Dutra to attempt to backtrack on this acknowledgment."); *Natural Resources Defense Council v. EPA*, 526 F.3d 591, 605-607 (9th Cir. 2008) (EPA rule overturned because:  (1) it contradicted EPA's prior statutory interpretation; and (2) EPA provided no reasonable explanation for its shift in position on the interpretation of the subject statute[25]); *U.S. v. Hartstein*, 557 F.3d 589, 590 (8th Cir. 2009) ("We noted specifically that, at resentencing, Hartstein would be bound by concessions she had already made regarding amounts received from her victims.").

[26] Not only does the SoI contradict the government's position over the preceding year; it also contradicts Individual Defendants' position with respect to the Accreditation Statute, as shown below.

**C.**     **The SoI Proves That Defs.' Supp. Brief Is Meritless**

Preliminarily, Plaintiff notes that the U.S. has been on full notice of Defs.' Supp.

Brief, not least because the Court drew the government's attention to said pleading.

*See* ECF No. 33, at 2.  Moreover, the U.S. had the capability to retrieve Defs.' Supp.

Brief. This is demonstrated by the government's use of the Court's ECF system when

filing its Notice (ECF No. 38) and the SoI.  From these facts, it is reasonable to infer[27]

that the U.S. is well acquainted with the contents of Defs.' Supp. Brief.  And yet, the U.S.

has damned them by silence, as shown below.

**1.**     ***The SoI Cites None Of The Documents Relied Upon By Individual Defendants In Support Of Their Accreditation Statute Argument***

None of the exhibits attached to Defs.' Supp. Brief is appended or adverted to the

SoI.  From this conscious omission, it is reasonable to infer[28] that the U.S. does not

subscribe to Individual Defendants' factual narrative.  If the U.S. does not do so, there is

no principled basis for the Court to do so.  Defs.' Supp. Brief is thus demonstrably devoid

of supporting evidence and, therefore, of merit.

**2.**     ***The SoI Cites None Of The Legal Authorities Relied Upon By Individual Defendants In Support Of Their Accreditation Statute Argument***

None of the decisions cited in Defs.' Supp. Brief features in the SoI.  From this

conscious omission, it is reasonable to infer[29] that the U.S. does not share Individual

Defendants' expansive and elastic interpretation of the Accreditation Statute.  If the U.S.

does not do so, there is no principled basis for the Court to do so.  Defs.' Supp. Brief is

---

[27] *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

[28] *Ibid.*

[29] *Ibid.*

thus demonstrably devoid of legal support and, therefore, of merit.

The government's desertion of Individual Defendants' factual and legal analysis explains perhaps why the U.S. had, prior to the Request for SoI, deemed it expedient to steer clear of this action. Such a vote of no confidence in Defendants' claim of IOIA immunity, coming as it does from a party they trumpet as an ally (ECF No. 26, at 1-3, 6 & 8) and with whom Defendants closely coordinate (ECF No. 39, at n.1), represents perhaps the most eloquent evidence justifying reconsideration.[30]   ECF Nos. 17-18.

**D.     The U.S. Has Failed To Step Into The Many Breaches Left By Defendants'
Non-Opposition To Plaintiff's Many Reconsideration-Related Arguments**

Preliminarily, Plaintiff notes that no legal impediment prevented the U.S. from doing so. *See* 28 U.S.C. § 517. The Court invited the U.S. to submit its views. ECF No. 33. The Request for SoI was not a Court Order. Therefore, the two parameters set forth therein could not operate to constrain or limit the government's scope of briefing.

Moreover, as shown *ante*, the U.S. was fully aware of the contents of the relevant pleadings herein, not least because the Court drew the government's attention to them. ECF No. 33, at 1-2. The government's electronic filing of its Notice (ECF No. 38) and the SoI demonstrates that, while preparing the SoI, the U.S. had the ability to retrieve the parties' pleadings via ECF. That the U.S. consulted the record in this action is confirmed by the multiple citations to it in the SoI. ECF No. 41, at 2 & 4.

---

[30] Should the Court deny the Reconsideration Motion, the supineness exhibited to date by Defendants and the U.S. (*see* below) is not likely to abate in the appeal that will follow. Indeed, it may be enforced because the D.C. Circuit does not countenance arguments not made below. *See*, *e.g.*, *Figueroa v. District of Columbia Metropolitan Police Department*, 633 F.3d 1129 n.3 (D.C. Cir. 2011).

And yet, despite its knowledge of the many deficiencies in Defendants' submissions (*see* below), the U.S. passed up the opportunity to cure any of them.

**1.     *Defendants Did Not Oppose – And, Therefore, Conceded[31] – Plaintiff's Reconsideration Arguments***

Defendants' two-page memorandum in opposition to the Reconsideration Motion (ECF No. 21) offered no *substantive* opposition to any of Plaintiff's "error" arguments, contained in thirty-two pages of his 45-page Reconsideration Motion.  *See* ECF No. 19-1, at 12-44.  For instance, Defendants made no attempt to rebut Plaintiff's argument that the Court disregarded "controlling decisions"[32] when it:

**(A)** interpreted the "plain text"[33] of the Amendment.  *See* ECF No. 19-1, at 12-45;

**(B)** elided the Ninth Circuit's antipodean interpretation of the Amendment/Executive Order in *Sarkis v. OHR*.[34]  *See* ECF No. 19-1, at 19-20;

**(C)** interpreted the Amendment in a manner violative of the nondelegation doctrine.  *See* ECF No. 19-1, at 20-24;

**(D)** failed to accord weight to Defendants' dispositive concessions/admissions.  *See* ECF No. 19-1, at 24-31 & 30-32;

**(E)** allowed Defendants to backtrack from their concession that the Amendment does not exempt them from the IOIA's definitional criteria.  *See* ECF No. 19-1, at 26-31;

---

[31] *See* n.24, *ante*, for citations.

[32] *Arias v. Dyncorp,* 856 F. Supp. 2d 46, 51 (D.D.C. 2012) (quoting *Negley v. FBI*, 825 F. Supp. 2d 58, 60 (D.D.C. 2011).

[33] ECF No. 18, at 8.

[34] Just as in the instant action, the three-judge appellate panel had before it not only the Amendment and the Executive Order but also the parties' submissions on both.  ECF No. 6, at 13-15, Material Fact(s) 1-2.

(**F**) declined to recognize and enforce herein the IOIA requirement that the organization under judicial scrutiny have offices/operations/personnel in the United States.  *See* ECF. No. 19-1, at 32-38;

(**G**) conferred immunity on Individual Defendants, particularly as the Accreditation Statute is not satisfied.  *See* ECF No. 19-1, at 38-42; and

(**H**) failed to deem true the Complaint's uncontroverted allegations.  *See* ECF No. 19-1, at 43-44.

### 2.    *The U.S. Does Not Fill Any Of The Above-Referenced Gaps*

The three-page SoI makes no attempt to rebut any of Plaintiff's above-referenced arguments, which Defendants likewise did not oppose.  Therefore, by operation of law, the government's silence – like Defendants' before it – concedes the above-referenced arguments.  *See* n.24, *ante*, for citations.  Said concessions by Defendants and the U.S. are dispositive.  *See* n.8, *ante*, for citations.  The U.S. has likewise not opposed – and, therefore, conceded – Plaintiff's arguments that:  (**A**) reconsideration is warranted in light of a recent "change in law," *i.e.*, *King v. Burwell*, 135 S.Ct. 2480 (2015) (ECF Nos. 19 & 22); and (**B**) Plaintiff's Accreditation Statute argument does not constitute a "new theory" precluding reconsideration.[35]  *See, e.g.*, ECF No. 29, at 11-12.

---

[35] The U.S. does not argue that reconsideration is precluded by the fact that Plaintiff's Accreditation Statute argument was raised for the first time in the Reconsideration Motion (ECF No. 19). The government's silence is understandable.  To begin with, the Accreditation Statute has no bearing on whether OHR enjoys immunity under the IOIA. It does not.  *See* ECF Nos. 19 & 22.  However, assuming *arguendo* OHR does have IOIA immunity, Plaintiff has from the outset argued that Individual Defendants would still not qualify as IOIA beneficiaries.  *See* ECF No. 6, at 38-42.  The Accreditation Statute is cited in the Reconsideration Motion merely as additional legal authority supporting this ***longstanding*** theory, which has remained unchanged throughout.  Therefore, the Accreditation Statute is not a "new theory;" it is only supporting law.  Even if the Accreditation Statute were deemed a "new theory," judicial consideration of it would not

## IV.  CONCLUSION

For the aforesaid reasons, Plaintiff respectfully submits the SoI should be

rejected.

Respectfully submitted,

By:  /s/ Zoran Zuza
Zoran Zuza
Zeljeznicka bb
71420 Pale
Bosnia & Herzegovina
+387-65-850-543 (Phone)
zzuzzazoran@yahoo.com

Date:  December 7, 2015                    *Pro Se* Plaintiff

---

be precluded because Defendants never objected to the interposition of said statute via
the Reconsideration Motion.  *See* ECF No. 21; *Dyson v. District of Columbia*, 710 F.3d
415, 419 (D.C. Cir. 2013).  Even if Defendants had objected, the Court would still have
had discretion to entertain the Accreditation Statute argument.  *Dyson*, *supra*, 710 F.3d
at 419-420 (citing *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 n.9 (D.C.
Cir. 1991) & *Patton Boggs, LLP v. Chevron Corp.*, 683 F.3d 397, 402 (D.C. Cir. 2012)).
Plaintiff notes also that the Court has:  **(1)** ordered supplemental briefing on the
Accreditation Statute (even though Individual Defendants had not thitherto opposed
Plaintiff's argument that they do not satisfy same); **(2)** granted Individual Defendants two
extensions of time in this regard (*see* Minute Orders of Aug. 13 & Sept. 24, 2015);
**(3)** issued the Request for SoI; **(4)** received the SoI and ordered briefing thereon; and
**(5)** devoted considerable time to these post-Reconsideration Motion proceedings.
Against this backdrop, declining to rule on the question of the Accreditation Statute
would be incongruous and not promotive of appellate economy.

## CERTIFICATE OF SERVICE

I hereby certify that, on December 7, 2015, the foregoing Plaintiff's Memorandum in Response to the Statement of Interest Submitted by the United States of America was filed with the Clerk of the Court via the CM/ECF system, causing it to be served upon all counsel of record.

/s/ Zoran Zuza
Zoran Zuza
