UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZORAN ZUZA, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: 14-01099 (RC) |
| v. : | |
| : | Re Document Nos.: 19, 28, 30, 37 |
| OFFICE OF THE HIGH REPRESENTATIVE, : | |
| *et al.*, : | |
| : | |
| Defendants. : | |

**MEMORANDUM OPINION**

DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION,
DENYING PLAINTIFF'S MOTION TO STRIKE,
DENYING PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY, AND
DENYING AS MOOT PLAINTIFF'S MOTION FOR ORDER

**I. INTRODUCTION AND BACKGROUND**

Defendants in this action—the Office of the High Representative (OHR), and the former and current High Representatives—are international entities tasked with managing peace agreement implementation efforts in Bosnia and Herzegovina. *See Zuza v. Office of High Representative*, 107 F. Supp. 3d 90, 91–92 (D.D.C. 2015), ECF No. 18 (discussing the factual background of this case). Because the Court found Defendants immune from suit under the International Organizations Immunities Act (IOIA),[1] the Court dismissed Plaintiff Zoran Zuza's claims against Defendants. *See* Order, ECF No. 17; *Zuza*, 107 F. Supp. 3d at 94–100.

Zuza timely filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). *See* Fed. R. Civ. P. 59(e); Pl.'s Mot. Recons., ECF No. 19. Zuza's motion urges

---

[1] Pub. L. No. 79-291, 59 Stat. 669 (1945) (codified as amended at 22 U.S.C. §§ 288–288f-7).

the Court to reconsider its dismissal because he claims that (1) *King v. Burwell*, 135 S. Ct. 2480 (2015), is an intervening change in controlling law, and (2) the Court's decision was based on errors of law. *See* Pl.'s Mot. Recons. 1; Mem. P. & A. Supp. Pl.'s Mot. Recons. 5–45, ECF No. 19-1. After preliminary review of Zuza's motion, the Court ordered supplemental briefing on one of Zuza's arguments and also requested a statement of interest from the United States. *See* Order, ECF No. 23; Request for Statement of Interest, ECF No. 33.

In the course of supplemental briefing, Zuza also filed three additional motions: a motion to strike portions of Defendants' supplemental brief, a motion for leave to conduct jurisdictional discovery, and a motion for an order obliging Defendants to respond to the other two recently filed motions. *See* Pl.'s Mot. Strike, ECF No. 28; Pl.'s Mot. for Leave to Conduct Limited Jurisdictional Discovery, ECF No. 30; Pl.'s Mot. Order, ECF No. 37.

After considering all the parties' filings and the United States' statement of interest, the Court finds that the arguments in Zuza's motion for reconsideration, motion to strike, and motion for leave to conduct jurisdictional discovery have no merit. The Court will therefore deny these three motions. And because Zuza's last motion seeks further briefing on his motion to strike and his motion for leave to conduct jurisdictional discovery, the Court will deny Zuza's last motion as moot.

## II. LEGAL STANDARD

Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Such motions cannot be used as "an opportunity to reargue facts and theories upon which a court has already ruled, nor as

a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (placing the burden on the movant in the context of a Rule 54(b) motion for reconsideration); *see also Kittner v. Gates*, 783 F. Supp. 2d 170, 172 (D.D.C. 2011) (same, for motions under Rules 59(e) and 60(b)).

### III.  ANALYSIS

#### A.  *King v. Burwell*

Zuza first argues that the Supreme Court's opinion last year in *King v. Burwell* compels an analysis of the IOIA different from the textual approach adopted in this Court's decision on Defendants' motion to dismiss. *See King v. Burwell*, 135 S. Ct. 2480 (2015); *see also* Mem. P. & A. Supp. Pl.'s Mot. Recons. 5–12. *King* teaches that, though courts "must enforce" plain statutory language, "when deciding whether the language is plain, [courts] must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King*, 135 S. Ct. at 2489 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

But *King*'s reasoning does not affect this Court's IOIA analysis, even assuming that *King* is an "intervening change of controlling law." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).[2] In keeping with

---

[2] Given that *King*'s relevant portions cite repeatedly to Supreme Court precedent, *King* arguably does not articulate any new rule of statutory interpretation. *See, e.g.*, *King*, 135 S. Ct. at 2489.

3

*King*'s mandate, this Court considered "as a whole," rather than "in isolation," the text of IOIA sections 1, 2(b), and 7(b), the 2010 amendment to the IOIA,[3] and the relevant executive order[4] before concluding that the statutory language was so "plain" that it enabled an analysis that "begins and ends" with the text. *See King*, 135 S. Ct. at 2495 (explaining that though a statutory phrase's meaning may seem plain "when viewed in isolation," its plain meaning may turn out to be "untenable in light of the statute as a whole" (internal quotation marks and brackets omitted) (quoting *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 343 (1994))); *Zuza*, 107 F. Supp. 3d at 93–95.

Alternatively, *King* allows for consideration of a statute's "broader structure" when statutory text is ambiguous. *See King*, 135 S. Ct. at 2492. But Zuza's motion cites no statutory text or purpose that creates ambiguity. *See* Mem. P. & A. Supp. Pl.'s Mot. Recons. 5–12.[5] Thus, to the extent Zuza seeks to advance an argument that the IOIA's text is ambiguous, Zuza fails to carry his burden under Rule 59(e). *See Kittner v. Gates*, 783 F. Supp. 2d 170, 172 (D.D.C. 2011).

### B. OHR's Immunity

In urging reconsideration of the Court's ruling on OHR's international organization immunity, Zuza's motion takes issue with the Court's statutory interpretation, the Court's treatment of concessions and admissions that Zuza alleges Defendants made, and the Court's

---

[3] Extending Immunities to the Office of the High Representative in Bosnia and Herzegovina and the International Civilian Office in Kosovo Act of 2010, Pub. L. No. 111-177, 124 Stat. 1260 (codified at 22 U.S.C. § 288f-7).

[4] Exec. Order No. 13,568, 76 Fed. Reg. 13,497 (Mar. 8, 2011).

[5] Indeed, Zuza appears to use *King* merely as a vehicle for reasserting his rejected arguments concerning lack of waiver, a Ninth Circuit opinion's silence, and the "U.S. Presence Requirement." *See* Mem. P. & A. Supp. Pl.'s Mot. Recons. 6–11; *see also Zuza*, 107 F. Supp. 3d at 96–97 & n.7 (rejecting these arguments).

rejection of the "U.S. Presence Requirement" that Zuza argues the IOIA requires. *See* Mem. P. & A. Supp. Pl.'s Mot. Recons. 12–37.

All of these arguments could have been presented, however, in Zuza's opposition to the motion to dismiss and in his sur-reply. And indeed, many of these arguments were. *See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 19–37, ECF No. 6; Pl.'s Sur-Reply Opp'n Defs.' Mot. Dismiss 4–12, ECF No. 11; *see also Zuza v. Office of the High Representative*, 107 F. Supp. 3d 90, 96–97 (D.D.C. 2015) (rejecting arguments made in Zuza's opposition and sur-reply to the motion to dismiss). The Court therefore declines to consider Zuza's arguments about OHR's immunity. *See Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (explaining that motions for reconsideration may not be used as opportunities to relitigate arguments that were or could have been advanced earlier). And regardless, nothing in Zuza's lengthy submission raises any issues meriting reconsideration.

### C.  The Individual Defendants' Immunity

Zuza next argues that the Court erred in holding that the individual defendants Inzko and Ashdown are entitled to immunity as "officers" of OHR. *See* Mem. P. & A. Supp. Pl.'s Mot. Recons. 38–42.

#### 1.  The Individual Defendants' Alleged Concessions

In this vein, Zuza first contends that, because Inzko and Ashdown bore the burden to establish their immunity and because they did not argue that they were "officers" under the IOIA, the Court could not find them immune from suit. *See Zuza v. Office of the High Representative*, 107 F. Supp. 3d 90, 94 n.3, 99 n.8 (D.D.C. 2015). But as the Court explained, Defendants did argue that Zuza's argument would lead to an "absurd result." *Id.* at 98 (quoting Defs.' Reply 5, ECF No. 7). Defendants also argued that "[b]oth § 288f-7 and IOIA specifically

grant immunity to OHR's 'officers or employees' without withholding immunity from the head of the office" and that "IOIA immunity has been applied to the UN Secretary General and [to other] top international organization officials." Defs.' Reply 5–6. In addition, Defendants cited *Brzak v. United Nations*, 551 F. Supp. 2d 313 (S.D.N.Y. 2008), upon which the Court's analysis also relied. *See Zuza*, 107 F. Supp. 3d at 93, 99; Mem. P. & A. Supp. Defs.' Mot. Dismiss 12, ECF No. 4-1. The fact that Defendants did not squarely contend that Inzko and Ashdown are (or were) OHR "officers" does not prevent the Court from concluding that they carried their burden to establish their immunity.[6]

### 2.  22 U.S.C. § 228e(a)[7]

In the alternative, Zuza argues that the Court erroneously disregarded section 8(a) of the IOIA, which states that an individual must be "duly notified to and accepted by the Secretary of State as a representative, officer, or employee" before he can enjoy IOIA immunity. 22 U.S.C. § 228e(a). The parties' supplemental briefs and the United States' statement of interest address this issue at length. *See* Defs.' Suppl. Opp'n, ECF No. 26; Pl.'s Suppl. Brief, ECF No. 29; Statement of Interest, ECF No. 41; Defs.' Resp. to Statement of Interest, ECF No. 42; Pl.'s Mem. Resp. to the Statement of Interest, ECF No. 43; Defs.' Reply to Pl.'s Resp. Regarding Statement of Interest, ECF No. 45; Pl.'s Reply to Defs.' Resp. to Statement of Interest, ECF No. 46.

---

[6] Zuza avers that he is "prepared to amend the Complaint to cite Lord Ashdown in his 'official capacity as *former* High Representative.'" Mem. P. & A. Supp. Pl.'s Mot. Recons. 3 n.2, 42 n.70. To the extent that Zuza requests leave to amend the complaint in this manner, the Court denies his request because it would be futile. *See Zuza*, 107 F. Supp. 3d at 99 (reviewing cases and holding that a former official enjoys international official immunity under the IOIA "against claims arising out of actions taken in his (prior) official capacity"). *See generally Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 87 (D.D.C. 2015) (explaining that an amended pleading is futile if it cannot withstand a motion to dismiss).

[7] Without deciding the issue, the Court's discussion of 22 U.S.C. § 288e(a) assumes, as the Court's prior opinion did, that Defendants have the burden to prove their IOIA immunity. *See Zuza v. Office of the High Representative*, 107 F. Supp. 3d 90, 94 n.3 (D.D.C. 2015).

*a. The United States' Statement of Interest*

The government's statement of interest states that "the United States confirms that both individual defendants satisfy section 8(a)'s requirements." Statement of Interest 3. In support, the United States attached a signed letter from Clifton Seagroves, the Department of State's Acting Deputy Director of the Office of Foreign Missions. *See* Statement of Interest Ex. A, ECF No. 41-1. According to that letter, "[t]he official records of the Department of State" indicate that Inzko and Ashdown "have been notified to the Secretary of State and accepted by the Director of the Office of Foreign Missions, acting pursuant to delegated authority from the Secretary of State." *Id.*

*b. Notification and Acceptance Shown*

With the government's statement of interest and Seagroves's signed letter, it is clear that Inzko and Ashdown meet 29 U.S.C. § 288e(a)'s requirements. Seagroves's letter expressly confirms that Inzko and Ashdown have been "notified to" and "accepted by" the Secretary of State, just as § 288e(a) prescribes. *See* 29 U.S.C. § 288e(a); Statement of Interest Ex. A. Letters from Inzko to the State Department also show that the State Department was notified of Inzko and Ashdown. *See* Defs.' Suppl. Opp'n Ex. 24 & Ex. A, ECF No. 27-1 (requesting that a list of individuals, including Inzko himself, be accepted as officers and employees entitled to IOIA immunity); Defs.' Suppl. Opp'n Ex. 25, ECF No. 26-11 (same, for Ashdown). And Zuza himself implies that a certificate or letter from the Department of State is sufficient to show acceptance. *See* Pl.'s Suppl. Brief 2, 11–15.

Instead of attacking the fact of Inzko's and Ashdown's notification and acceptance, Zuza merely argues that the documents verifying notification and acceptance are "unauthenticated and, therefore, inadmissible." *See* Pl.'s Evidentiary Obj. 1, ECF No. 31 (objecting to Inzko's letters to

the State Department); Pl.'s Evidentiary Obj. Exs. Attached to Statement of Interest, ECF No. 44 (objecting to Seagroves's letter). But Federal Rule of Evidence 901 requires a proponent of evidence merely to produce "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). To satisfy the authentication requirement, the proponent may use "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

Here, the letters from Inzko to the State Department bear the same letterhead and style as a later letter, which the United States expressly endorsed as being from Inzko. *Compare* Defs.' Suppl. Opp'n Ex. 24 & Ex. A *and* Defs.' Suppl. Opp'n Ex. 25 *with* Statement of Interest Ex. B. *See also* Statement of Interest 4 n.2 (describing the letter the government produced as a "Letter from Valentin Inzko to Ambassador Gentry O. Smith"). In light of these circumstances, the Court sees no reason to question the authenticity of Inzko's letters.

Similarly, Seagroves's letter was submitted directly by the Department of Justice on behalf of the United States and bears the letterhead of the State Department. *See* Statement of Interest Ex. A. Independent inquiry confirms that Clifton Seagroves is the Acting Deputy Director of the Office of Foreign Missions and exercises State Department functions associated with 22 U.S.C. § 288e. *See* Re-Delegation of Certain Authorities and Functions Under the International Organizations Immunities Act, 80 Fed. Reg. 75,700 (Dec. 3, 2015) (delegating § 288e duties to the Deputy Director of the Office of Foreign Missions and other State Department personnel); *Key Personnel*, U.S. Dep't of State, http://www.state.gov/ofm/contact/personnel/index.htm (last visited Feb. 4, 2016) (informing the public of Mr. Seagroves's service as Acting Deputy Director). As with Inzko's letters, nothing gives the Court reason to question the authenticity of the State Department's letter.

Zuza's evidentiary objections lack merit, and Zuza makes no arguments disputing the relevant facts: Inzko and Ashdown were notified under 29 U.S.C. § 288e(a) to the Secretary of State, and the Secretary of State accepted them under § 288e(a) as appropriate recipients of IOIA immunity. Inzko and Ashdown therefore meet the requirements set forth in § 288e(a). On this front, Zuza has not shown a "need to correct a clear error" of law. *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004); *see also Kittner v. Gates*, 783 F. Supp. 2d 170, 172 (D.D.C. 2011) (placing the burden of proof for a Rule 59(e) motion on the movant).

### c. Retroactive Notification and Acceptance Permissible

Even if Inzko and Ashdown did not meet 29 U.S.C. § 288e(a)'s requirements at the time Zuza's complaint was filed, that would not bar their IOIA immunity now. The IOIA itself states that, once individuals merit IOIA immunity, they are immune not just "from suit," but also from "legal process." 22 U.S.C. § 288d(b). And the weight of relevant case law favors finding that if international officials acquire immunity during the pendency of a suit, the suit must be dismissed. *See generally Abdulaziz v. Metro. Dade Cnty.*, 741 F.2d 1328, 1329–30 (11th Cir. 1984) (discussing diplomatic immunity and holding that it "serves as a defense to suits already commenced"); *Fun v. Pulgar*, 993 F. Supp. 2d 470, 474 (D.N.J. 2014) (same); *Republic of Philippines v. Marcos*, 665 F. Supp. 793, 799 (N.D. Cal. 1987) (same). The Supreme Court, in discussing foreign sovereign immunity, has stated that "such immunity reflects current political realities and relationships, and aims to give foreign states and their instrumentalities some *present* 'protection from the inconvenience of suit as a gesture of comity.'" *Republic of Austria v. Altmann*, 541 U.S. 677, 696 (2004). More broadly, the D.C. Circuit has explained that, for parties who merit IOIA immunity, the IOIA creates a "baseline" of "absolute immunity" to all kinds of suits. *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1341 (D.C. Cir. 1998).

These authorities persuade the Court that the IOIA, like diplomatic immunity and foreign sovereign immunity, can serve as a defense to suits already commenced. As this Court has noted before, IOIA immunity "is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Garcia v. Sebelius*, 919 F. Supp. 2d 43, 47 (D.D.C. 2013) (internal quotation marks omitted) (quoting *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990))).[8]

Because IOIA immunity can apply retroactively, 22 U.S.C. § 288e(a)'s requirements will not bar Inzko and Ashdown's IOIA immunity, even if they first satisfied those requirements after Zuza filed his complaint in this case. Thus, § 288e(a) is not a reason for the Court to disturb its decision to find Inzko and Ashdown immune from suit.

### 3.  Functional Immunity

Zuza also argues that the Court improperly held that the "functional" immunity referenced in *Tuck v. Pan American Health Organization*, 668 F.2d 547, 550 n.7 (D.C. Cir. 1981), displaces the text of 22 U.S.C. § 288f-7. *See Zuza v. Office of the High Representative*,

---

[8] Analogously, courts have held that IOIA immunity, even if obtained after the events at issue in the litigation, still serves as a defense to suit. *See, e.g.*, *Garcia v. Sebelius*, 867 F. Supp. 2d 125, 143–44 (D.D.C. 2012), *vacated in part on other grounds*, 919 F. Supp. 2d 43 (D.D.C. 2013); *Weidner v. Int'l Telecomms. Satellite Org.*, 392 A.2d 508, 510 (D.C. 1978). For instance, the District of Columbia Court of Appeals declared in this context that "[i]f a cause of action arises and an individual . . . is subsequently clothed with immunity, courts lack jurisdiction to entertain actions brought against such individuals . . . so long as the immunity exists." *Weidner*, 392 A.2d at 510.

Although these cases assessed IOIA immunity using the date on which the complaints were filed, they did so because of the facts of those cases. Both *Garcia* and *Weidner* concerned foreign officials who gained immunity after the events triggering the lawsuits, but before the complaints were filed. *See Garcia*, 867 F. Supp. 2d at 144; *Weidner*, 392 A.2d at 510. The question before the Court now—whether immunity may apply retroactively if it is acquired during the *pendency* of suit—was not squarely presented. Thus, where cases like *Garcia* and *Weidner* imply that, for IOIA immunity to apply, it must be present when the complaint is filed, that implication is merely dicta. It is not central to those cases' holdings and accordingly does not affect the Court's analysis here.

107 F. Supp. 3d 90, 98–100 (D.D.C. 2015); Mem. P. & A. Supp. Pl.'s Mot. Recons. 38–39. But his argument merely reiterates one the Court already rejected: Zuza's previous argument that the IOIA uses the words "officer" and "employee" in their technical sense. *See Zuza*, 107 F. Supp. 3d at 98–99; *see also* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 38–42 (making the argument for a technical interpretation). As the Court noted before, "the IOIA cannot bear such an 'absurd result.'" *Zuza*, 107 F. Supp. 3d at 98 (quoting Defs.' Reply 5); *see also United States v. Turkette*, 452 U.S. 576, 580 (1981) (instructing that, in statutory interpretation, "absurd results are to be avoided"). A motion for reconsideration is not a vehicle to relitigate this issue. *See Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011).

### D. Factual Background Adopted in the Court's Opinion

Lastly, Zuza contends that the Court erred by including in its opinion certain facts not alleged in the complaint concerning the Dayton Peace Agreement and the Peace Implementation Council. *See* Mem. P. & A. Supp. Pl.'s Mot. Recons. 43–44; *Zuza v. Office of the High Representative*, 107 F. Supp. 3d 90, 91 (D.D.C. 2015). Specifically, Zuza argues that because Defendants had "conceded" certain factual issues, the Court should not have adjudicated them in Defendants' favor. *See* Mem. P. & A. Supp. Pl.'s Mot. Recons. 43.

The standard of review for a Rule 12(b)(1) motion to dismiss allows the Court to "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation mark omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). But contrary to Zuza's argument, Defendants did not concede the factual issues to which Zuza refers, and so those facts are not "undisputed." Instead, Defendants' motion to dismiss outlines the very

facts (adopted by the Court in its opinion) that Zuza says his complaint contradicts. *See* Mem. P. & A. Supp. Defs.' Mot. Dismiss 2–4, ECF No. 4-1. These facts were thus "disputed," and the Court was not required to adopt Zuza's version; it could resolve the disputed facts based on the record at the time of the Court's decision. *See Coal. for Underground Expansion*, 333 F.3d at 198. For that reason, the Court's factual summary did not contain "a clear error," and the Court need not reconsider its prior decision. *See Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).[9]

In sum, none of Zuza's arguments urging reconsideration have merit. The Court will therefore deny Zuza's motion for reconsideration.

### E. Zuza's Other Motions

#### 1. Motion to Strike

Zuza has also moved to strike portions of Defendants' supplemental brief. *See* Pl.'s Mot. Strike, ECF No. 28; *see also* Defs.' Suppl. Opp'n, ECF No. 26 (containing the text at issue in Zuza's motion to strike). But this motion, like his motion for reconsideration, lacks merit. Contrary to Zuza's claim that the arguments contained in Defendants' brief are "immaterial" under Federal Rule of Civil Procedure 12(f), Defendants' arguments directly respond to the Court's order, which directs the parties to address whether "Inzko and Ashdown presently satisfy

---

[9] Moreover, in the portion of the Court's opinion devoted to the Dayton Peace Agreement and the Peace Implementation Council, the facts set forth there did not affect the merits of the Court's decision. *See Zuza*, 107 F. Supp. 3d at 93–100 (omitting, in the entirety of the Court's analysis, any reference to the Dayton Peace Agreement or the Peace Implementation Council). Even if the Court's view of these background facts were to change, it would not change the IOIA immunity analysis. Zuza's argument here is therefore futile. *See generally Aygen v. District of Columbia*, 311 F.R.D. 1, 3 (D.D.C. 2015) (explaining, in the Rule 60(b) context, that "the movant must provide the district court with reason to believe that vacating the judgment will not be an empty exercise or a futile gesture" (alteration and internal quotation mark omitted) (quoting *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995))).

the requirements of section 8(a)." *See* Order 3, ECF No. 23; Defs.' Suppl. Opp'n 4–12; *cf.* Pl.'s Mem. P. & A. Supp. Mot. Strike 3–6, ECF No. 28-1. And the remainder of Zuza's motion seeks to strike material that does not affect the Court's analysis here. *See* Pl.'s Mot. Strike 6–8 (discussing personal jurisdiction and other defenses briefly mentioned in Defendant's supplemental brief); *supra* Parts III.A–D (declining to address those topics). The Court will therefore deny Zuza's motion to strike.

2. Motion for Jurisdictional Discovery

Zuza's motion for leave to conduct jurisdictional discovery alleges that Zuza "requires facts in order to respond to Individual Defendants' fact-based jurisdictional defense." Mem. P. & A. Supp. Mot. for Leave to Conduct Limited Jurisdictional Discovery 3, ECF No. 30-1. But the facts here are so clear that any jurisdictional discovery would be futile. *See Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 274 (D.D.C. 2008) ("[J]urisdictional discovery . . . should not be allowed when discovery would be futile." (internal quotation marks omitted) (quoting *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998))). Zuza does not factually dispute the government's statement that Inzko and Ashdown were notified to and accepted by the Secretary of State, just as 29 U.S.C. § 288e(a) requires. *See generally supra* Part III.C.2 (discussing how the government's statement is conclusive on this issue). As set forth above, Zuza only challenges the authenticity of documents and legal implications of those facts. *See id.* Neither of which requires the uncovering of unknown facts.

In fact, Zuza has offered no theory of what "facts" jurisdictional discovery would uncover to refute Defendants' immunity claims. *See* Mem. P. & A. Supp. Mot. for Leave to Conduct Limited Jurisdictional Discovery 3. Because "jurisdictional discovery should be permitted 'only to verify allegations of specific facts,'" the Court will deny Zuza's motion for

leave to conduct jurisdictional discovery. *See Crist*, 995 F. Supp. at 13 (quoting *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992)).

### 3.  Motion for Order

Zuza's last motion seeks an order obliging Defendants to respond to Zuza's motion to strike, Zuza's motion for jurisdictional discovery, and one of Zuza's evidentiary objections. *See* Pl.'s Mot. Order, ECF No. 37. Because the Court will deny Zuza's other motions and also finds Zuza's evidentiary objection meritless, the Court will deny Zuza's last motion as moot. *See supra* Part III.C.2.b (refuting Zuza's evidentiary objection); *supra* Parts III.E.1–2 (discussing Zuza's motion to strike and motion for jurisdictional discovery).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration (ECF No. 19) is **DENIED**, Plaintiff's motion to strike (ECF No. 28) is **DENIED**, Plaintiff's motion for jurisdictional discovery (ECF No. 30) is **DENIED**, and Plaintiff's motion for the order adverted to in the minute order of September 24, 2015 (ECF No. 37) is **DENIED AS MOOT**. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 4, 2016                                         RUDOLPH CONTRERAS
                                                                                           United States District Judge